**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————  ————

No. 04-1395

————  ————



MCI CONSTRUCTORS, INCORPORATED, a Delaware
Corporation,

Plaintiff,

versus

GREENSBORO, CITY OF, a municipality, organized
under the laws of the State of North Carolina,

Defendant - Appellee,

and

HAZEN AND SAWYER, P.C., a New York
Corporation,

Defendant,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA, a Pennsylvania
Corporation,

Third Party Defendant - Appellant.

————————

No. 04-1729

————————

MCI CONSTRUCTORS, INCORPORATED, a Delaware
Corporation,

Plaintiff - Appellant,

versus

GREENSBORO, CITY OF, a municipality, organized
under the laws of the State of North Carolina,

Defendant - Appellee,

and

HAZEN AND SAWYER, P.C., a New York
Corporation,

Defendant,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA, a Pennsylvania
Corporation,

Third Party Defendant.

---

Appeals from the United States District Court for the Middle
District of North Carolina, at Greensboro. William L. Osteen,
District Judge. (CA-99-2-1)

---

Argued: December 2, 2004          Decided: March 15, 2005

---

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

---

Affirmed in part, reversed and vacated in part, and remanded by
unpublished per curiam opinion.

---

**ARGUED:** C. Allen Foster, GREENBERG TRAURIG, L.L.P., Washington,
D.C.; John Michael Gillum, MANIER & HEROD, Nashville, Tennessee,
for Appellants. George William House, Michael David Meeker,
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North
Carolina, for Appellee. **ON BRIEF:** Eric C. Rowe, David S. Panzer,
GREENBERG TRAURIG, L.L.P., Washington, D.C., for Appellant MCI
Constructors, L.L.C.; Thomas A. Farr, HAYNSWORTH, BALDWIN, JOHNSON
& GREAVES, L.L.C., Cary, North Carolina, for Appellant National
Union Fire Insurance Company. William P. H. Cary, John M.
DeAngelis, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD,
Greensboro, North Carolina, for Appellee.

-2-

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

The City of Greensboro, North Carolina entered into a contract with MCI Constructors, LLC on January 16, 1996, for the construction of a wastewater treatment plant in Greensboro, for a cost of roughly $29 million. Greensboro's City Manager signed the contract on behalf of the City. As required by North Carolina law, MCI obtained a performance bond from National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The bond incorporated the terms of the contract between the City and MCI and guaranteed that MCI would "well and truly perform" the contract. The contract includes Article 16 which provides that Greensboro's City Manager resolve disputes relating to the performance of the contract and that the City Manager's decision "shall be final and conclusive" and "in case any question touching the contract shall arise between the parties, such . . . decision shall be a condition precedent to the right of [MCI] to receive any monies under the Contract."

When construction of the wastewater plant became substantially delayed, the City terminated the contract, and the City Manager thereafter acting as "referee" under Article 16 of the contract, determined that MCI materially breached the contract and owed the City roughly $13.4 million in damages.

MCI commenced this action challenging, among other things, the City Manager's determination. The district court ruled that the City Manager's determination in favor of the City was

-4-

analogous to the determination of a third party arbitrator, such as an architect or engineer, and should not be set aside except on a showing of "fraud, bad faith, or gross mistake." Because MCI failed to advance evidence sufficient to prove fraud, bad faith, or gross mistake, the district court entered summary judgment in favor of the City. The district court also entered summary judgment against the surety, National Union, on its bond.

On appeal, MCI contends (1) that the district erred in requiring MCI to submit its claims first to the City Manager; (2) that the district court erred in applying a standard of "fraud, bad faith, or gross mistake" to review the City Manager's decision; and (3) that MCI was denied procedural due process when the City Manager acted arbitrarily and when the district court subsequently decided the City's claims based on the City Manager's decisionmaking authority, which in MCI's view amounts to "a taking of property without any process whatsoever." Independent of the issues raised by MCI, National Union contends that the claim against it on the bond was barred by a one-year contractual-limitations period or a three-year statute-of-limitations period. National Union also challenges the judgment against it because it was not given the opportunity "to perform as surety" and complete the contract, thereby reducing the damages which were based on inflated costs.

-5-

We affirm all the rulings of the district court except its application of the "fraud, bad faith, or gross mistake" standard, which it applied to review the decision of the City Manager. On that issue, we reverse and remand for further proceedings. We conclude that since the City Manager signed the contract for the City and in essence was adjudicating his own performance, rights, and liabilities under the contract, North Carolina law requires that the City Manager's performance be measured by a standard of objective reasonableness "based upon good faith and fair play" -- a standard that must be read into the contract so as to prevent the contract from being rendered illusory. Accordingly, we affirm in part, reverse and vacate in part, and remand to the district court for further proceedings consistent with this opinion.

I

MCI commenced this diversity action against the City and the City's engineer, alleging claims for breach of contract, breach of warranty, quantum meruit, negligent misrepresentation, wrongful termination, and declaratory relief that the City's termination of the contract was wrongful. The City filed a motion to dismiss as well as a counterclaim for breach of contract. It also filed a third-party claim against National Union on its bond. Pursuant to motions filed by the parties, the court dismissed most of the claims, concluding that Article 16 of the contract was "broadly

-6-

worded" and required that "all disputes regarding the fulfillment of the contract by MCI go to the City Manager."

The parties submitted their claims to the City Manager, and on April 16, 2002, the City Manager ruled that the City had properly terminated MCI "for cause" and rejected MCI's claim that the termination was "for convenience." MCI returned to the district court and moved to vacate the decision for "evident partiality" under the Federal Arbitration Act and sought to enjoin further proceedings before the City Manager with respect to damages. The district court rejected MCI's claims and ruled that the proceedings before the City Manager were controlled by North Carolina law, not the Federal Arbitration Act.

After the City Manager conducted hearings on damages, he rendered a decision on February 5, 2003, concluding that "MCI Constructors shall pay to the City of Greensboro the sum of $13,377,842.73." On receipt of this decision, MCI filed a second amended complaint to add claims for fraud, conspiracy, and "fraud on the court."

Thereafter on the City's motion for summary judgment, the district court found that "there is no legally sufficient evidentiary basis for a reasonable jury to find that the City Manager's decision was influenced by fraud, bad faith, or gross mistake" and that "MCI [is left] with no further viable claims." The court also granted the City's motion for summary judgment

-7-

against National Union as surety. On MCI's Rule 59 motion for a new trial, MCI renewed its objection to the application of the fraud standard for reviewing the City Manager's decision and argued, for the first time, that Article 16 in fact operated as a "satisfaction clause," which would render the contract illusory and therefore unenforceable. The district court denied this motion. From the district court's final judgment, this appeal followed.

## II

MCI contends first that the district court erred by "requiring MCI to submit issues to [the City Manager] that the Contract did not allow [the City Manager] to decide." As a consequence, the City Manager allegedly exceeded the authority conferred on him because, as MCI argues, the contract did not empower him to decide issues concerning the City's breach of the contract or the propriety of the City Manager's own conduct; it only allowed him to render decisions regarding MCI's performance.

The district court ruled that the language of Article 16 of the contract "is broadly worded" and "requires that all disputes concerning the fulfillment of the contract by MCI go to the City Manager."* Article 16 thus "acts as a condition precedent to MCI's

_____

*Article 16 of the contract provides:

City Manager to be Referee:

To prevent disputes and litigations, the City Manager shall in all cases, determine the amount, quality, and

-8-

recovery of payment under the contract, but the condition precedent does not, as MCI argues, act as a limit on the scope of the claims which must be submitted to the City Manager."

The City Manager rendered a decision first that the City's termination of MCI was for the delays in the project and therefore was for cause. This was plainly a determination concerning "the amount, quality, and acceptability of the work" as well as "the fulfillment of the Contract on the part of the Contractor." Likewise, the City Manger's determination of damages went directly to the cost of completion, the liquidated damages, and to the contract itself, which also falls within the scope of Article 16. Under Article 16, the City Manager is entitled to determine "the amount, quality, and acceptability of the work and materials which are to be paid under the contract." In view of the expansive nature of Article 16, the City Manager was properly given the issues he decided as a condition precedent to further action and we affirm on this issue. See, e.g., Rodgers Builders, Inc. v.

---

acceptability of the work and materials which are to be paid for under the contract; shall determine all questions in relation to said work and supplies, and the performance thereof; and shall in all cases decide every question which may arise relative to the fulfillment of the Contract on the part of the Contractor. His estimate and decision shall be final and conclusive, and in case any question touching the Contract shall arise between the parties, such estimate and decision shall be a condition precedent to the right of the Contractor to receive any monies under the Contract.

-9-

McQueen, 331 S.E.2d 726, 731 (N.C. Ct. App. 1985) (illustrating that North Carolina courts interpret such clauses broadly).

In reaching its conclusion, the district court stated that "the City and MCI are two sophisticated and competent parties who selected the City Manager to determine issues relating to payment for work performed and other issues relating to the fulfillment of the contract. . . . The court cannot act in contravention to the terms of the contract to let MCI out of what it perceives is a bad deal." We agree.

## III

MCI next contends that the district court erred in holding that under North Carolina law the decision of a contractually designated referee must be upheld in the absence of a showing of "fraud, bad faith, or gross mistake." MCI argues that the City Manager's decision had to be measured under a standard of reasonableness. According to MCI, North Carolina law writes into every contract the implied covenant of good faith and fair dealing. Moreover, to prevent Article 16 from being illusory -- based on one party to the contract determining its own benefits and liability -- the City Manager's decisions had to be evaluated under an objective standard of reasonableness defined by this good faith and fair dealing. In sum, MCI asserts that the district court erred in requiring it to show "fraud, bad faith, or gross mistake" and in

-10-

requiring direct proof of "fraudulent intent" with respect to the City Manager's decision.

The district court did indeed rule that "the law in North Carolina allows MCI to have a court review the City Manager's decision for bad faith or gross mistake." Principally, the district court relied upon two North Carolina cases in reaching its determination as to the governing standard. See Elec-Trol, Inc. v. C.J. Kern Contractors, Inc., 284 S.E.2d 119, 121 (N.C. Ct. App. 1981); Welborn Plumbing & Heating Co. v. Randolph County Bd. of Educ., 150 S.E.2d 65, 69 (N.C. 1966).

We agree with MCI that the district court applied an improper standard under North Carolina law. The cases on which the district court relied construed contractual provisions in which the parties to the contract referred disputes to a third party, who was not a party to the contract. See Elec-Trol, 284 S.E.2d at 120-21 (illustrating that the third-party referee was an architect); Welborn, 150 S.E.2d at 68-69 (same). These cases thus are distinguishable from the case at hand where the referee, the City Manager, was also the one who signed the contract on behalf of the City and was responsible for seeing to its performance by the City.

When one party to a contract is designated in the contract to decide finally the issues about whether the contract was breached, the contract, without more, becomes illusory, because the performance of the contract is determined by the party alleging

-11-

that the contract was breached.   On this, Professor Williston observes:

> Promises to render a performance satisfactory to the other party, or to pay for performance if it is satisfactory to the promisor, are common in contracts. It has been questioned whether an agreement in which the promise of one party is conditional on his own or the other party's satisfaction contains the element of a contract -- whether the agreement is not illusory in character because conditioned upon the whim or caprice of the party to be satisfied.   Since, however, such a promise is generally considered as requiring a performance which must be satisfactory to him or her in the exercise of honest judgment, such contracts have been almost universally upheld.

13 Williston On Contracts § 38:21, at 458-60 (4th ed. 2000) (footnotes omitted) (citing for this proposition, among other cases, Fulcher v. Nelson, 159 S.E.2d 519 (N.C. 1968)).

Given this understanding, the general rule in North Carolina, where a contract confers on one party a discretionary power affecting the rights of the other party, is that such a contract is not illusory so long as its interpretation is exercised in an objectively reasonable manner based upon good faith and fair play. See, e.g., Mezzanotte v. Freeland, 200 S.E.2d 410, 414 (N.C. Ct. App. 1973), cert. denied, 201 S.E.2d 410 (N.C. 1974).   This rule has been applied generally "[w]here, from the language of the contract, it is doubtful whether the parties intended that one party should have the unqualified option to terminate it in case of dissatisfaction or whether the intention was to give the right to terminate only in the event of dissatisfaction based upon some

-12-

reasonable ground." <u>Fulcher v. Nelson</u>, 159 S.E.2d 519, 522 (N.C. 1968) (internal quotation marks and citations omitted). In such a case, "the contract will be construed as not reposing in one of the parties the arbitrary or unqualified option to terminate it." <u>Id.</u> (internal quotation marks and citations omitted).

Accordingly, we conclude that the standard to be applied in this case to review the City Manager's decision is not "fraud, bad faith, or gross mistake" but rather is an objective standard of reasonableness based upon good faith and fair play. We therefore reverse this ruling, vacate that part of the judgment which depends on it, and remand this portion of the case to the district court for further proceedings consistent with this opinion.

## IV

Finally, MCI contends that the way the district court referred claims to the City Manager and then subsequently decided those claims based on the City Manager's rulings denied MCI of procedural due process. MCI argues that the City Manager's actions made a mockery of the due process guarantee, and therefore the district court improperly and without notice dismissed all of MCI's claims based solely upon the City Manager's decisionmaking authority. In essence, the district court concluded that the issues raised by MCI were covered by the reference to the City Manager because they related to the fulfillment of the parties' contractual obligations.

-13-

We find MCI's claim without merit. As this court has stated in another contract case involving a city government, "there manifestly are no federal constitutional issues posed by a simple dispute over the construction of a [contract] and that is all there is to the case." Heath v. Fairfax, 542 F.2d 1236, 1238 (4th Cir. 1976) (per curiam) (holding that the plaintiffs' claim which was based on a city's failure to pay them the salary allegedly provided for by a contract did not rise to the level of a due process violation). For there to be a due process violation, the City must have acted to deprive an individual of life, liberty, or property. There is no such deprivation here when it is grounded on the contractual language agreed to by the parties. "The mere fact that a city is a municipal corporation does not give to its refusal to perform a contract the character of a law impairing its obligation or depriving of property without due process of law." McCormick v. Oklahoma City, 236 U.S. 657, 660 (1915).

Accordingly, we affirm on this claim by MCI.

V

National Union independently challenges the district court's judgment against it alleging that the City's action was not filed within the one-year limitation period provided for by the contractual language and, alternatively, that the City's claim was filed beyond the three-year statute of limitations provided by North Carolina law. Finally, National Union contends that the City

-14-

first and materially breached the bond by precluding National Union
from performing upon MCI's termination and by expending more than
double the uncontroverted evidence of the reasonable cost to
complete. We address these claims in turn.

A

Section 5.1.1 of the contract between the City and MCI,
for which National Union provided the performance bond, provides:

> Performance Bond -- in an amount not less than 100% of
> the total amount payable to the Contractor by the terms
> of the Contract as security for the faithful performance
> of the work. Bond must be valid until one year after the
> date of issuance of the Certificate of Substantial
> Completion.

National Union contends that by these terms, the bond was only
valid for one year and therefore that any suit filed on it more
than one year after issuance of the certificate of substantial
completion was barred. According to National Union, the one-year
period commenced on May 31, 2001, when the Certificate of
Substantial Completion was issued, and suit was not filed until
March 11, 2003.

We conclude that National Union misconstrues the import
of the statutory language on which it relies. The statutory
language does not provide a contractual limitations period within
which to commence suit. Rather, it describes the period during
which the bond is "valid." Such a provision, surely, extends the
bond from not only the construction period, but also to the end of
one year after construction. Thus, if some part of the work fails

-15-

within the one year after completion, the bond would provide coverage.

Accordingly, we affirm the district court's ruling in rejecting this theory.

B

National Union also contends that the action against it was barred by the North Carolina statute of limitations contained in § 1-52 of the North Carolina General Statutes. Because this statute begins to run on the date a promise is broken, see Penley v. Penley, 314 S.E.2d 51, 62 (N.C. 1985), National Union contends the City's action is barred three years after June 24, 1998, the date of MCI's termination.

The City contends that even if National Union is correct about its dates and about when a cause of action against it may have accrued, the statute of limitations does not run "against the king," i.e. the municipality as an agency of the State. Rowan County Bd. of Educ. v. United States Gypsum Co., 332 S.E.2d 648, 653 (N.C. 1992). In general terms, this doctrine permits a municipality or the State to file an action beyond the time period prescribed by the State's statute of limitations.

While National Union recognizes this principle, it argues that the State and its municipalities are protected under it only with respect to governmental functions and not proprietary functions. See Rowan County, 418 S.E.2d at 654. While National

-16-

Union may be correct in that proposition, it cannot demonstrate that the City's actions in constructing a wastewater treatment plant were proprietary, as opposed to governmental. The <u>Rowan</u> court defined these terms as follows:

> Any activity of the municipality which is discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for private advantage of the compact community, it is private or proprietary.

<u>Id.</u> at 373 (citation omitted). It is readily apparent that in constructing a wastewater treatment plant, the City was promoting and protecting the health, safety, security, and general welfare of its citizens in this case. <u>See</u> <u>Ex rel. State Art Museum Building Comm'n v. Travelers Indemnity Co.</u>, 432 S.E.2d 419, 422 (N.C. Ct. App. 1993). Accordingly, we agree with the district court that the City's counterclaim against National Union was not barred by North Carolina's statute of limitations governing contracts.

C

Finally, National Union contends that it should not be liable on the bond because it was not given the opportunity of performing upon MCI's termination. National Union argues that effectively it should have been given the opportunity to find a replacement contractor.

This argument, however, ignores the fact that the city had a specific contractual right by virtue of Article 5, § 15.2.4,

-17-

to complete the performance of the work itself, and it exercised that right. As a bond is to be read in light of the contract it secured, see, e.g., RGK, Inc. v. United States Fidelity & Guaranty Co., 235 S.E.2d 234 (N.C. 1988), the bond had to be read in light of this contractual provision which authorized the City to "take possession of the work and . . . finish the work as owner deem[s] expedient." Accordingly, we also affirm the district court in rejecting this argument.

## VI

In sum, with respect to the standard applied by the district court in reviewing the City Manager's decisions on the contract, we reverse and vacate the judgment insofar as it depends on application of this standard. In all other respects, we affirm.

AFFIRMED IN PART, REVERSED AND
VACATED IN PART, AND REMANDED

-18-