MCI CONSTRUCTORS, INC.,      )
a Delaware corporation,      )
                             )
     Plaintiff,             )
                             )
     v.                     )    1:99CV00002
                             )    **(CONSOLIDATED)**
HAZEN AND SAWYER, P.C.,      )
a New York corporation,      )
CITY OF GREENSBORO, a        )
municipality organized under )
the laws of the State of     )
North Carolina,              )
                             )
     Defendants.            )


\* \* \* \* \* \* \* \* \* \*


MCI CONSTRUCTORS, LLC,       )
a Delaware corporation,      )
                             )
     Plaintiff,             )
                             )
     v.                     )    1:02CV00396
                             )
CITY OF GREENSBORO, a        )
municipality organized under )
the laws of the State of     )
North Carolina,              )
HAZEN AND SAWYER, P.C.,      )
a New York corporation,      )
                             )
     Defendants.            )


\* \* \* \* \* \* \* \* \* \*

<u>MEMORANDUM OPINION AND ORDER</u>

OSTEEN, District Judge

This matter is before the court on motions relating to claims by Plaintiff MCI Constructors, Inc. ("MCI") against Defendant City of Greensboro ("the City") and a counterclaim by the City against MCI. Both parties have moved for summary judgment on both the claim and counterclaim. For the reasons stated below, all motions will be denied.

**I. BACKGROUND**

The general background of the case has been set forth in the court's memorandum opinions, dated March 24, 2000, October 6, 2000, January 18, 2001, September 6, 2001, and November 1, 2002. The following facts are relevant to the motions at hand.

In 1996, MCI and the City entered into a contract for the upgrade and expansion of the T.Z. Osborne Wastewater Treatment Plant ("the project"). The contract contained a provision allowing the City to terminate the contract if MCI failed to comply with the contract's requirements;[1] upon termination under

---

[1] The contract allowed termination for cause for, among other reasons, the following:

> 15.2.1. if CONTRACTOR persistently fails to perform the Work in accordance with the Contract Documents (including, but not limited to, failure to supply sufficient skilled workers or suitable materials or equipment or failure to adhere to the progress schedule
> (continued...)

2

this provision, MCI would become liable for the City's costs to complete the project, to the extent that they exceeded the contract price. The contract also contained a provision, Article 16, dictating that certain disputes between the parties regarding the fulfillment of the contract would be submitted to the City Manager, who would be empowered to resolve them.[2]

Construction of the wastewater treatment plant was divided into several phases. Phase II was scheduled to be completed by October 7, 1997, but was not completed by that date. In May

---

[1](...continued)
established under paragraph 2.9 as adjusted from time
to time pursuant to ¶ 6.6;
. . . .
15.2.4.  if CONTRACTOR otherwise violates in any
substantial way any provisions of the Contract
Documents . . . .

(MCI's Br. Response City's Mot. Summ. J. Ex. 1.)

[2] Article 16 is as follows:

To prevent disputes and litigations, the City Manager
shall in all cases, determine the amount, quality, and
acceptability of the work and materials which are to be
paid for under the contract; shall determine all
questions in relation to said work and supplies, and
the performance thereof; and shall in all cases decide
every question which may arise relative to the
fulfillment of the Contract on the part of the
Contractor.  His estimate and decision shall be final
and conclusive, and in case any question touching the
Contract shall arise between the parties, such estimate
and decision shall be a condition precedent to the
right of the Contractor to receive any monies under the
Contract.

(MCI's Br. Response City's Mot. Summ. J. Ex. 1.)

3

1998, the parties agreed to a revised schedule, with a new completion date set for September 15, 1998. In June 1998, the City concluded that MCI would not be able to comply with the new schedule and completion date and terminated MCI's participation in the project. MCI was notified of the termination by a letter written by the City Manager, Ed Kitchen, dated June 17, 1998.

Thereafter, MCI filed suit alleging multiple violations of North Carolina law, including a claim of wrongful termination. The City filed a counterclaim seeking compensation for the cost of completing the plant after MCI was terminated. In an order dated October 6, 2000, the court invoked Article 16 of the contract and directed both parties to submit their claims to the City Manager for resolution.

The City Manager held two hearings. The first was held for the purpose of determining whether the City had terminated MCI for cause or for convenience (the "cause hearing"); the second was for the purpose of determining damages (the "damages hearing"). The City Manager concluded that the termination had been for cause and that MCI was required under the contract to pay the City approximately $13.4 million in damages.[3]

---

[3] The amount of the award was based on a series of costs detailed in a change order ("Change Order 6"), issued by the City shortly before the cause hearing. Change Order 6 adjusted the contract price in such a way as to increase the amount of money owed by MCI to the City.

4

In a memorandum opinion issued between the cause hearing and the damages hearing, the court indicated to the parties that it would apply North Carolina law and consider the City Manager's decision final as to all issues, "absent a showing of bad faith or a failure to exercise honest judgment." (Sept. 6, 2002 Mem. Op. at 19). Following the issuance of the City Manager's decision, MCI challenged it, alleging bad faith. Ultimately, the court concluded that MCI had not demonstrated a "legally sufficient evidentiary basis for a reasonable jury to find that the City Manager's decision was influenced by fraud, bad faith, or gross mistake." (Mar. 10, 2004 Judgment and Order at 2.) Accordingly, the court granted judgment as a matter of law in favor of the City on all of MCI's claims and ordered MCI to pay the City the amount awarded by the City Manager.

MCI appealed the judgment on the grounds that the court had applied the wrong standard in reviewing the City Manager's decision. The Fourth Circuit agreed and overruled the March 10 judgment. The Fourth Circuit, in its opinion, indicated that the proper standard is "an objective standard of reasonableness based upon good faith and fair play." <u>MCI Constructors, Inc. v. City of Greensboro</u>, No. 04-1395 (4th Cir. Apr. 8, 2005). The case was remanded to this court to be resolved through application of this standard.

5

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  If the non-moving party is to prevail, there must be more than just a factual dispute; the fact in question must be material and the dispute must be genuine.  <u>See</u> Fed R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Although the court must view the facts in the light most favorable to the nonmovant, <u>see</u> <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2513, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." <u>Solis v. Prince George's County</u>, 153 F. Supp. 2d 793, 807 (D. Md. 2001).  Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented.  <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 719 (4th Cir. 2003) (citing <u>Anderson</u>, 477 U.S. at 247-48, 106 S. Ct. at 2509-10).

## III. ANALYSIS

The central issue in these summary judgment motions is whether the facts are sufficiently settled for the court to

6

determine that the City Manager's decision was either reasonable or unreasonable. The facts and circumstances have developed in this case in a way probably anticipated by no one at the time the contract was signed. The application of the correct standard to the unique situation at hand is difficult to determine from the case law. The City urges the court to adopt a "substantial evidence" approach and to uphold the City Manager's decision as long as there is substantial evidence supporting it. MCI opposes this approach and urges the court to focus on the deficiencies in the City Manager's decision and to overturn it if it finds the City Manager either did something he should not have done or failed to do something he should have done. The court will consider each of these arguments in turn.

A. The City's Motion

The City bases its summary judgment motion on the argument that the court should adopt a substantial evidence test for evaluating the reasonableness of the City Manager's decision. That is, the City suggests that, if the court were to find that the City Manager's decision was supported by substantial evidence, it should hold that the decision was reasonable as a matter of law. As a model of substantial evidence review, the City cites the cases Zurn Engineers v. California ex rel. Department of Water Resources, 138 Cal. Rptr. 478 (Ct. App. 1977) and Clack v. Department of Public Works, 80 Cal. Rptr. 274 (Ct.

7

App. 1969).  Of relevance to this discussion is that, in California, substantial evidence review is conducted by courts, rather than by a jury.[4]  <u>Zurn</u>, 138 Cal. Rptr. at 501.

The court declines to adopt the City's proposal.  Both <u>Zurn</u> and <u>Clack</u> involve the appointment of a state-employed engineer as a contractual decision maker.  In that sense, they are analogous to the cases relied upon by this court in its earlier order. Those cases were <u>Elect-Trol, Inc. v. C.J. Kern Contractors, Inc.</u>, 284 S.E.2d 119 (N.C. Ct. App. 1981), and <u>Welborn Plumbing & Heating Co. v. Randolph County Board of Education</u>, 150 S.E.2d 65 (N.C. 1966), which involved the appointment of architects as decision makers.  The Fourth Circuit was clear that it considered these cases distinguishable from the case at hand because an architect is a third party and the contract between MCI and the

---

[4] As a subsidiary argument in favor of having this matter decided by a judge, the City suggests that review of the City Manager's decision is analogous to judicial review of a jury's decision on a motion for judgment as a matter of law.  Although there are some similarities, the court finds that they are outweighed by the differences.  A jury is charged only with making findings of fact regarding issues in which the members have no personal stake.  In contrast, the City Manager found facts, interpreted the contract, and determined what evidence he would hear; he was, in essence, both judge and jury.  Thus, review of his decision is more than an evaluation of whether a body of evidence met the minimal standard to be credible; it is an evaluation of whether he behaved as a reasonable person would when confronted with a complex set of circumstances.  The determination of how a reasonable individual would have behaved under these circumstances calls for an application of human experience more than the application of legal standards; as such, it is more suited to a jury than to a judge.

8

City reserved decision making authority in a party to the contract. See MCI Constructors, Inc. v. City of Greensboro, No.04-1729, slip op. at 11 (4th Cir. Apr. 8, 2005). The court sees no reason that Zurn and Clack are not similarly distinguishable from the situation at hand.

The court agrees with the City that the model provided by the two cases would be straightforward in its application to the facts of this case. Nonetheless, Zurn and Clack involve review of decisions that are entitled to a certain level of deference because the decision maker was constrained by professional standards and a measure of impartiality. In contrast, the City Manager was not impartial, nor did he have any professional duties guiding his performance. Rather, as the Fourth Circuit emphasized, he was acting as a representative of a party to the contract, determining that party's rights and duties under the contract. In light of the Fourth Circuit's opinion, the court concludes that the City Manager is not entitled to the level of deference implicit in a substantial evidence review.

A second reason the court declines to adopt the substantial evidence test is that it conflicts with the line of North Carolina cases following Mezzanotte v. Freeland, 200 S.E.2d 410 (N.C. Ct. App. 1973). The Fourth Circuit cited Mezzanotte as a source for the reasonableness standard. See MCI Constructors, Inc. v. City of Greensboro, No. 04-1395, slip op. at 12 (4th Cir.

Apr. 8, 2005).  That case is a logical starting point for an examination of this question.

The reasonableness standard outlined in <u>Mezzanotte</u> has most commonly been applied to situations in which one party to a contract is required to use "reasonable efforts" to ensure that a condition precedent was satisfied.  <u>See, e.g.</u>, <u>Resort Realty of Outer Banks, Inc. v. Brandt</u>, 593 S.E.2d 404 (N.C. Ct. App. 2004) (defendant had a duty to use good faith and reasonable efforts to secure a replacement property); <u>Wilder v. Squires</u>, 315 S.E.2d 63 (N.C. Ct. App. 1984) (plaintiff had a duty to use reasonable efforts to secure financing for the purchase of property); <u>Smith v. Currie</u>, 253 S.E.2d 645 (N.C. Ct. App. 1979) (same).  Although there are significant differences between the case here and these cases, they are similar to the present matter in the sense, addressed by the Fourth Circuit, that a determination of the existence of rights and obligations is within the discretion of one of the parties.  This discretion is the key fact giving rise to the reasonableness standard because the purpose of implying the reasonableness provision is to place a limit on this otherwise unbounded discretion.  For this reason, the court concludes that the reasonable efforts cases provide useful guidance on this matter.

Of particular utility among these cases is <u>Smith v. Currie</u>, in which the North Carolina Court of Appeals indicated that the

10

issue of the reasonableness of a defendant's efforts would not usually be decided by a judge on summary judgment. According to the court, "[t]he nature of the issue involved in the present case, whether the defendant acted in good faith and made reasonable efforts to obtain a loan, is such that summary judgment is ordinarily not a proper vehicle for its resolution." 253 S.E.2d at 647. The court further stated that

> [s]uch an inquiry necessarily involves conflicting interpretations of the perceived events, and even where all the surrounding facts and circumstances are known, reasonable minds may still differ over their application to the legal principle involved. It is only in the most exceptional case that the movant would be entitled to summary judgment when the issue, as here, concerns the reasonableness of his actions.

Id.; see also Smith v. Dickinson, 290 S.E.2d 770, 773 (N.C. Ct. App. 1982) (denying summary judgment on the question of whether a husband used reasonable efforts to obtain a loan when it was unclear whether he knew he would be able to convince his wife to comply with the requirements); Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 253 S.E.2d 625, 628 (N.C. Ct. App. 1979) ("[W]e think that when the evidence is considered in the light most favorable to the defendant, it is sufficient to permit the jury to find that the plaintiff breached its contract with the defendant by failing to make reasonable efforts . . . ."); cf. Wilder, 315 S.E.2d at 66 ("Whether a prospective home buyer has indeed made a good faith effort is a question for the jury."). This is consistent with the law of at least one other state as well.

11

See, e.g., Foster Enters., Inc. v. Germania Fed. Sav. & Loan Ass'n, 421 N.E.2d 1375, 1382 (Ill. App. Ct. 1981) (stating, in reference to a contractual reasonableness provision, that "[i]t is hornbook law that such factual determinations are exclusively the province of the jury."). This line of cases applying Mezzanotte indicates that reasonableness is a question of fact, generally to be decided by a jury. Thus, these cases are in conflict with the substantial evidence cases discussed above,[5] and the court finds the former to be applicable here.

The court does not agree with the City that submission of the matter to a jury is the equivalent of trying the matter de novo. As the City has noted, for a given set of facts, there might be multiple conclusions that are equally reasonable. To the extent that is true for these facts, the jury would be required to accept the City Manager's conclusion if it is reasonable, even if it is not the conclusion that the jury members would, themselves, have reached in his place.

_____

[5] The City suggests that the substantial evidence test is consistent with an "adequate reason" test applied in at least one of Mezzanotte's progeny, Midulla v. Howard A. Cain Co., 515 S.E.2d 244, 246–47 (N.C. Ct. App. 1999). The court does not read the phrase "adequate reason" in that case to describe a new test. Rather, the Midulla court seems to be providing a description of the available evidence. If here, as was the case in Midulla, the City advanced evidence showing that the City Manager's decision was reasonable and MCI produced only unsupported allegations to the contrary, the City would be entitled to summary judgment. Nonetheless, for reasons discussed below, the court does not find this to be true.

Furthermore, by submitting the matter to a jury, the court would not be allowing the implied term of reasonableness to contradict an express term. The City suggests that jury review is inconsistent with the stated purpose of Article 16, which is "[to] prevent disputes and litigations." (MCI's Br. Response City's Mot. Summ. J. Ex. 1.) That language, however, does not create any obligations for either party; rather, it provides an indication of why Article 16 was adopted. A decision by the court to submit the matter to a jury does not suggest that the parties did not adopt Article 16 for that purpose. The proceeding before the City Manager gave the parties an opportunity and a forum to resolve their differences without litigation, and the fact that they were unable to do so does not mean that the parties engaged in the proceeding without purpose.

For these reasons, the court concludes that the application of the standard of reasonableness is not satisfied by a determination by the court that there was substantial evidence to support the City Manager's decision. Whether the City Manager behaved reasonably when he determined that the termination was for cause and when he determined the amount of damages is a question of fact, generally to be decided by a jury. Nonetheless, based on the evidence supplied by the City, summary judgment might still be appropriate in its favor if MCI has

13

failed to produce any evidence that the City Manager acted
unreasonably.

B.  MCI's Motions

MCI's argument is focused on identifying flaws in the City
Manager's decisions; according to MCI, the flaws make his
decisions indisputably unreasonable.  As to each of the arguments
discussed below, even if it fails to demonstrate that MCI is
entitled to judgment as a matter of law, the argument may
demonstrate that there is a factual issue precluding summary
judgment in the City's favor.  MCI argues that the City Manager's
decision was unreasonable as a matter of law for the following
reasons:

1.  The City Manager failed to decide which provision of
    the contract was violated.

MCI first contends that, to conclude the contract was
terminated for cause, the City Manager was required to determine
that one of the events listed in the contract as a cause for
termination had occurred.  MCI points out that, in the City
Manager's order following the first proceeding, he did not
articulate which contract provision he was invoking (i.e., 15.2.1
or 15.2.4),[6] nor did he specify what events he viewed as
triggering the termination clauses.  MCI further states that,
during a deposition taken after the proceedings, the City Manager

_____

[6] These provisions are reproduced <u>supra</u> note 1.

14

was unable to articulate the precise grounds for his decision. MCI asserts it could not have been reasonable for the City Manager to conclude that the termination was for cause if he had not determined that one of the contractually specified causes had taken place.

In response, the City argues the City Manager was under no duty to articulate the specific basis for his decision.[7] The City also suggests the City Manager implicitly decided the contractual conditions had been met by deciding the termination was for cause.

The court concludes this is a factual dispute and it is material to the current inquiry. A reasonable juror could conclude the City Manager made his decision without regard to the contract's requirements, and that such a decision was unreasonable. Alternatively, a reasonable juror could conclude the City Manager implicitly concluded the contract requirements were met and such a decision was reasonable. This issue cannot serve as the basis for summary judgment in MCI's favor, but it precludes summary judgment in favor of the City.

_____

[7] The court agrees that the contract is silent in regard to whether the City Manager was required to provide a detailed breakdown of the elements for his decision. Nonetheless, the court understands MCI to be claiming not that the City Manager failed to articulate an element but that he made his decision without a necessary element.

15

2.   The City Manager failed to limit his consideration to
        grounds articulated by the City at the time of
        termination.

     MCI next contends that the City Manager's conclusion that

the termination was for cause was unreasonable because he

considered as justification for the termination factors not given

by the City at the time of termination.  According to MCI, under

North Carolina contract law, the City Manager could only consider

those factors given by the City at the time of termination.[8]

Specifically, he could only hear evidence regarding the causes

listed in the June 17, 1998, letter notifying MCI that it had

been terminated.

     The court does not agree that the City Manager was confined

to considering the matters mentioned in the letter.  Assuming for

this discussion that the law would bar the extra factors in a

North Carolina court, the law applies only to breach of contract

actions.  Although the proceeding before the City Manager was

conceptually similar to a breach of contract action, he was not

actually conducting a proceeding at law.  The City Manager

proceeded in many ways as though he were presiding over a trial,

but the form of the proceeding was the result of an agreement

between the parties, reached shortly before the proceeding took

place.  The conceptual similarity to a breach of contract action

_____

     [8] This rule is a form of estoppel adopted in McAden v.
Craig, 24 S.E.2d 1, 3 (N.C. 1943).

                              16

does not mean that the City Manager was required to apply North Carolina law, as a judge would have, if not so required by the contract. The contract required only that the City Manager determine whether there had been a persistent or substantial violation of the contract terms; it did not require the City inform MCI of the grounds for the termination, nor did it prescribe the grounds the City Manager was to consider.

Given this conclusion, the City Manager's failure to apply the rule of law advanced by MCI does not conclusively demonstrate the City Manager's unreasonableness. Nonetheless, there is an element of fairness that weighs against a party terminating a contract for one reason and then, when that reason appears to be insufficient justification, trying to find other reasons to justify its actions. Were a jury to believe that such was the case here, the jury could conclude that it was unreasonable for the City Manager to consider the additional grounds for discharge. This issue precludes summary judgment in the City's favor as well.

> 3. The City Manager concluded that there had been a breach of the contract, even though that argument had been waived.

MCI contends the City Manager's conclusion, that the termination was for cause, was unreasonable because he considered events that took place before the submission of the recovery schedule. According to MCI, under North Carolina contract law,

17

if there were a breach of the contract for failure to meet the
October 1997 completion date, the City waived a rescission remedy
by accepting performance after that date.[9]  Thus, MCI could not
be terminated for cause for any event taking place prior to the
waiver, and if the City Manager relied upon those events, his
decision was unreasonable.

As discussed above, in Part III.B.2., the court does not
agree that the City Manager was required to apply North Carolina
law.  The City Manager was charged with determining if MCI's work
on the project triggered one of the contract's termination
provisions.  Nothing in those provisions indicates they may not
be employed if the City accepted performance following a
persistent or substantial violation.  Absent a requirement in the
contract, the City Manager had no specific duty to restrict his
considerations to events arising after the alleged waiver.

Despite this conclusion, the court does not consider the
question of waiver to be irrelevant to the reasonableness
determination altogether.  It may be the case that it was
unreasonable for the City Manager to determine there had been a
persistent or substantial violation of the contract when the City
elected not to terminate the contract for several months after

_____

[9] For this argument, MCI cites <u>Wheeler v. Wheeler</u>, 263
S.E.2d 763, 765 (N.C. 1980) ("[C]ontinued acceptance of
performance by an innocent party after partial breach of contract
. . . . constitutes a valid waiver of a contractual provision . .
. .").

18

the City knew the contract date would not be met. Thus, although the court concludes that the City Manager was not required to apply the North Carolina waiver rule, it is possible reasonableness required him to apply the principle behind the rule when making his decision.

> 4. The City Manager based his decision on Change Order 6, which was invalid.

MCI contends that the City Manager's decision on damages was objectively unreasonable to the extent that he relied on Change Order 6. According to MCI, Change Order 6 was invalid because the City failed to comply with contractual procedures. MCI also asserts that, without a valid change order, the contract does not allow the City to collect money from MCI. MCI raised this argument before the City Manager,[10] but the City Manager made no express ruling on it. MCI argues that the City Manager did not, and could not have, determined that Change Order 6 was valid, and, absent such a determination, the City Manager's decision that the City was entitled to damages could not have been reasonable.

After reviewing the arguments on this issue by both sides, the court concludes that a reasonable juror could agree with the reasoning of each party. It is possible to conclude that the

---

[10] MCI initially challenged Change Order 6 in this court, and the court determined that Article 6 required that the issue be submitted to the City Manager.

19

City Manager adopted the damage numbers in spite of the fact that there was no valid change order in existence, and it is possible to conclude that such an adoption was unreasonable.  It is also possible to conclude that the City Manager implicitly decided either the change order was valid or a valid change order was not necessary under the contract, and such a decision was reasonable. The court concludes this is an outstanding issue of fact to be submitted to a jury.

     5.    The City Manager had no valid basis for calculating
          damages.

MCI contends the amounts spent by the City to complete the project were not audited in a way that would have allowed the City Manager to evaluate their reliability.  MCI asserts that the initial set of completion costs advanced by the City undisputedly contained costs that were not properly chargeable to MCI under the contract.  It further asserts that the ultimate amounts paid to the replacement contractor, Haren, was far in excess of Haren's original estimate; neither the City nor Haren can document the reasons for the excess.  MCI argues it was unreasonable for the City Manager to use those figures to calculate damages when he knew that some of the proposed costs were improper and the rest were unverified.

After reviewing the arguments on this issue by both sides, the court concludes that a reasonable juror could agree with the reasoning of each party.  It may have been unreasonable for the

City Manager to have decided on an award when he suspected that it was more than the City was actually entitled to recover. In contrast, it may have been reasonable for him to do so when he believed that the City was entitled to some compensation and used the best numbers available. The court concludes that this does not demonstrate that MCI is entitled to summary judgment but that it does raise an issue of fact, precluding summary judgment for the City.

In light of the issues raised by MCI, the court concludes there are a number of factual disputes surrounding whether the City Manager's decision meets an objective standard of reasonableness based upon good faith and fair play. While the City may be correct in saying that each of these issues was raised before, and rejected by, the City Manager, that fact does not indicate that the City Manager's decision was reasonable. It remains for a jury to make the determination that the City Manager was acting within the bounds of the discretion imparted to him by the contract when he rejected MCI's contentions.

## IV.  CONCLUSION

For the reasons set forth herein,

IT IS ORDERED that the City of Greensboro's Renewed Motion for Summary Judgment Against MCI Constructors, LLC [438] is DENIED.

21

IT IS FURTHER ORDERED that MCI's Motion for Partial Summary
Judgment on Wrongful Termination [443] is DENIED.

IT IS FURTHER ORDERED that MCI's Motion for Partial Summary
Judgment on the City's Damage Claim [447] is DENIED.

This the 25th day of November 2005.


_____
United States District Judge