IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MCI CONSTRUCTORS, INC., )
a Delaware corporation, )
   )
   Plaintiff, )
   )
   v. ) 1:99CV00002
   ) **(CONSOLIDATED)**
HAZEN AND SAWYER, P.C., )
a New York corporation, )
CITY OF GREENSBORO, a )
municipality organized under )
the laws of the State of )
North Carolina, )
   )
   Defendants. )

* * * * * * * * * *

MCI CONSTRUCTORS, LLC, )
a Delaware corporation, )
   )
   Plaintiff, )
   )
   v. ) 1:02CV00396
   )
CITY OF GREENSBORO, a )
municipality organized under )
the laws of the State of )
North Carolina, )
HAZEN AND SAWYER, P.C., )
a New York corporation, )
   )
   Defendants. )

* * * * * * * * * *

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

Plaintiff MCI Constructors, Inc. ("MCI") filed this diversity suit against Defendant Hazen and Sawyer, P.C. ("Hazen and Sawyer") alleging violations of North Carolina law, including negligence, professional malpractice, negligent misrepresentation, tortious interference with contract, unfair and deceptive trade practices, bad faith breach of duty, fraud, conspiracy to defraud, and fraud on the court. This matter is before the court on two motions by Hazen and Sawyer for summary judgment.

## I. BACKGROUND

These claims are part of an ongoing dispute arising out of a contract between MCI and the City of Greensboro, North Carolina ("the City") for the construction of a wastewater treatment plant. The background of the claims against the City can be found in the court's memorandum opinions, dated March 24, 2000, October 6, 2000, January 18, 2001, September 6, 2001, and November 1, 2002. The following facts are relevant to the motion at hand.

In 1995, after a competitive bidding process, MCI and the City entered into a contract for the upgrade and expansion of the T.Z. Osborne Wastewater Treatment plant ("the project"). Hazen

and Sawyer, an engineering and consulting firm, was to act as a project supervisor. Hazen and Sawyer had designed the upgrade and extension and had participated in compiling the information made available to construction companies for the preparation of bids.

The contract called for MCI to complete the project in four phases. Heavy rain in 1996 delayed Phase I, and MCI utilized contract procedures to request an extension of time, which the City granted. Phase II was also delayed by unexpected conditions on the project site. These conditions caused MCI to spend larger amounts than planned to continue construction and caused the project to fall behind schedule. MCI did not use contract procedures to request a time extension. Phase II was not completed by the contractually established deadline of October 7, 1997. Accordingly, in May 1998, MCI and the City agreed to a new completion date of September 15, 1998. Shortly thereafter, the City concluded that MCI was not able to comply with the revised schedule. On June 17, Ed Kitchen, the Greensboro City Manager ("the City Manager"), notified MCI that the City was terminating the contract.

Following the termination of the contract, MCI sued Hazen and Sawyer, alleging torts associated with the breach of Hazen and Sawyer's professional duties. These allegations included misfeasance by Hazen and Sawyer during the bidding process and

3

during the building process. Further allegation, as well as one of Hazen and Sawyer's defenses arose after the suit was filed.

In addition to suing Hazen and Sawyer, MCI sued the City, alleging causes of action centered around a breach of contract theory. The court concluded that it was required to enforce a provision of the contract, Article 16, dictating that certain disputes between the parties regarding the fulfillment of the contract would be submitted to the City Manager, who would be empowered to resolve them. The City Manager held two hearings. The first was held for the purpose of determining whether the termination was "for cause" or "for convenience";[1] the second was for the purpose of determining damages. The City Manager concluded that the termination had been for cause and that MCI was required under the contract to pay the City approximately $13.4 million in damages. The amount of the award was based on a series of costs detailed in a change order ("Change Order 6"), issued by the City shortly before the beginning of the proceedings before the City Manager. Change Order 6 adjusted the contract price in such a way as to increase the amount of money

---

[1] The contract allowed the City to terminate the contract "for cause" or "for convenience." If terminated for cause, MCI was required to reimburse the City for any costs of completion that exceeded the contract price. If terminated for convenience, MCI had no further obligation under the contract and was entitled to collect for work already performed.

4

owed by MCI to the City. Pursuant to the contract, Change Order 6 was approved by Hazen and Sawyer.

MCI challenged the City Manager's decision and award in this court. The court upheld the decision and entered an order enforcing it. MCI successfully appealed the order, and further review of the City Manager's decision is now pending.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). If the non-moving party is to prevail, there must be more than just a factual dispute; the fact in question must be material and the dispute must be genuine. See Fed R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the court must view the facts in the light most favorable to the nonmovant, see Anderson, 477 U.S. at 255, 106 S. Ct. at 2513, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." Solis v. Prince George's County, 153 F. Supp. 2d 793, 807 (D. Md. 2001). Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the

5

evidence presented. <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 719 (4th Cir. 2003) (citing <u>Anderson</u>, 477 U.S. at 247-48, 106 S. Ct. at 2509-10).

## III. ANALYSIS

Hazen and Sawyer has advanced several alternative theories under which it believes it is entitled to summary judgment. There are nine counts listed in the complaint, and each is addressed by at least one of the theories. Specifically, in its first motion, Hazen and Sawyer moved for summary judgment on: (1) all counts, on the basis of a defense of res judicata and collateral estoppel; (2) all counts, on the basis of lack of evidence of damages; (3) counts involving negligence, on the basis of a defense of contributory negligence; (4) counts involving rock, on the basis of lack of evidence; (5) the claim of unfair trade practices, on the basis of a defense, the "learned profession" exception; and (6) the claim of tortious interference with contract, on the basis of a defense of qualified privilege. In its Second Motion for Summary Judgment, Hazen and Sawyer renewed its claims of res judicata and collateral estoppel. MCI has conceded that it has failed to establish a claim for unfair trade practices, and summary judgment will be granted on that claim. The other bases for summary judgment are addressed in turn.

6

A. Res judicata and Collateral Estoppel

Hazen and Sawyer argues that all of MCI's claims are barred by res judicata or collateral estoppel. "Under the doctrine of res judicata, or claim preclusion, 'a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them.'" State ex rel. Tucker v. Frinzi, 474 S.E.2d 127, 128 (N.C. 1996) (quoting Thomas M. McInnis & Assocs. v. Hall, 349 S.E.2d 552, 556 (N.C. 1986)). Similarly, "[u]nder the doctrine of collateral estoppel, or issue preclusion, 'a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies.'" Id. (quoting Hall, 349 S.E.2d at 557). Necessary to both doctrines is the existence of final judgment in a prior action, and the court is not convinced that such a judgment is present in this case.

Hazen and Sawyer asks the court to give preclusive effect to the decision of the City Manager. As a preliminary point, the City Manager's decision is not currently final. However, even if it is eventually affirmed by the court, it will not preclude MCI's action against Hazen and Sawyer. Despite a certain resemblance to a trial, the proceedings before the City Manager

7

were not judicial proceedings, and they are not entitled to preclusive effect on that ground.

Further, the proceedings are not entitled to preclusive effect by analogy to arbitration proceedings. Arbitration is only preclusive to the extent specified by the agreement to arbitrate, <u>Murakami v. Wilmington Star News, Inc.</u>, 528 S.E.2d 68, 70 (N.C. Ct. App. 2000), and MCI and Hazen and Sawyer have not entered into any agreement regarding the settlement of disputes between them. Article 16 of the contract between MCI and the City is binding only regarding disputes between those two parties.

It is correct that the City Manager decided some of the points of fact and law at issue in the dispute between MCI and Hazen and Sawyer. Nonetheless, the court's earlier determination that the City Manager's decision was enforceable[2] rested entirely on the basis that, in Article 16, MCI had agreed to accept that decision, and it should not be understood as an indication that the court had adopted the City Manager's reasoning or incorporated it into the order. Additionally, it would require an expansive reading of the contract for the court to conclude

---

[2] In its judgment and order, dated March 10, 2004, the court concluded that the City Manager's award was "binding and enforceable" (<u>id.</u> at 3) and stated that "this judgment shall be a final judgment resolving all issues as between the City and MCI" (<u>id.</u>).

8

that Article 16 was intended to include Hazen and Sawyer, and Hazen and Sawyer has not argued that it does.

Absent a final judgment on the merits in a prior action, there can be no res judicata or collateral estoppel. Because the City Manager's decision does not qualify as a prior final judgment, the court will deny summary judgment on this theory.

B. Damages

Hazen and Sawyer also seeks summary judgment on the grounds that "MCI has no proper (admissible) evidence of damages allegedly caused by Hazen and Sawyer." (Mem. Supp. Hazen and Sawyer's Mot. Summ J. at 11.) The court finds that this claim is not sufficiently specific to support summary judgment. Local Rule 56.1(c) states that, in a motion for summary judgment made by a defendant, "[t]he party shall . . . set out the elements that the claimant must prove (with citations to supporting authority), and explain why the evidence is insufficient to support a jury verdict on an element or elements, or why some other rule of law would defeat the claim." MCI has named Hazen and Sawyer in nine counts, each alleging a separate tort. Hazen and Sawyer has not provided the court with the elements of each of these torts or explained how evidence of damages is essential to each claim. Nor has it provided any authority indicating that lack of evidence of damages is a blanket defense to all of the claims. The court will not, of its own initiative, compile a

9

list of ways in which evidence of damages might be important to MCI's claims and attempt to address each of them. In doing so, the court would run the risk of misinterpreting Hazen and Sawyer's argument and of creating arguments that MCI has not had a chance to address. Instead, the court finds that this argument is insufficient to justify summary judgment.

The only legal authority cited by Hazen and Sawyer in this section of its motion relates to the evaluation of expert testimony. It is not inappropriate for a court to determine the admissibility of expert evidence for the purposes of a summary judgment motion. See, e.g., Cavallo v. Star Enter., 100 F.3d 1150, 1159 (4th Cir. 1996) (affirming a district court's decision to exclude expert testimony and grant summary judgment). Nonetheless, the court declines to do so here because Hazen and Sawyer has not explained how the exclusion of MCI's expert would affect any of MCI's tort claims. This should not be taken as an indication that the court perceives Hazen and Sawyer's argument regarding admissibility to be without merit.

C. Contributory Negligence

The third theory advanced by Hazen and Sawyer in its motion is that it is entitled to summary judgment on the claims of negligence because MCI was contributorily negligent. "'In a negligence action, summary judgment for defendant is proper where the evidence . . . establishes contributory negligence on the

10

part of plaintiff . . . .'" Hahne v. Hanzel, 588 S.E.2d 915, 917 (N.C. Ct. App. 2003) (quoting Williams v. Carolina Power & Light Co., 243 S.E.2d 143, 144 (N.C. Ct. App. 1978)). "The existence of contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." Martishius v. Carolco Studios, Inc., 562 S.E.2d 887, 896 (N.C. 2002).

Here, Hazen and Sawyer bases its motion on testimony by MCI's expert witness on damages, Bob McCally, who testified that MCI had some fault in each of the construction categories in which MCI experienced cost overruns.[3] The court finds this

---

[3] The testimony cited by Hazen and Sawyer is, in its entirety, as follows:

Q: Looking at Exhibit 13, at Page 1, 2, and 3, it appears that every one of these items has some fault attributed to MCI. Is that right?
A: I believe that's a true statement.
Q: And what is the nature of MCI's fault in each of these cost categories?
A: In talking to the folks that I talked to, MCI had some inefficiencies early on in the job, had some difficulty obtaining people, had some difficulty obtaining the level of competency that they would like to have, some of the crafts, base on what I'm told. And they had some, apparently some supervision problems that could have affected their work.

(Hazen and Sawyer's Mot. Summ. J. at 13 (quoting McCally Deposition Tr. 64:19-25, 65:1-7).)

11

evidence inadequate to justify summary judgment for several reasons.

First, a conclusion by the expert that some of the fault is attributable to MCI is not, on its face, equivalent to a conclusion that MCI was negligent. Hazen and Sawyer does not articulate how the term "fault" as used by the expert relates to North Carolina's doctrine of negligence. It is possible that MCI used all necessary care in proceeding with the project and yet made a decision that resulted in additional costs. In such a case, the fault would lie with MCI, but MCI would not have been negligent, as the term is used in the law. Without further clarification, the court cannot conclude that the testimony speaks to the issue of MCI's negligence.

Second, the expert's testimony is made in part with reference to "Exhibit 13." Exhibit 13 is a document, prepared by Mr. McCally, that breaks down the cost overruns into general categories, such as "Concrete Labor" and "Metals Installation." The expert testified that MCI bore some of the fault for the actual costs exceeding the budgeted costs in each category. To establish contributory negligence, Hazen and Sawyer would need to demonstrate that all additional costs that fall into a single category constitute the same injury. Nonetheless, Hazen and Sawyer's brief is silent regarding the negligent acts and associated injuries addressed by the testimony. Instead, Hazen

12

and Sawyer asks the court to conclude that if MCI's negligence caused any part of the excess cost in a particular category, it relieves Hazen and Sawyer of any liability for negligence which led to additional costs in that category.

In support of this argument, Hazen and Sawyer cites <u>Lienhart v. Dryvit Systems, Inc.</u>, 255 F.3d 138, 149 (4th Cir. 2001), for the principle that a plaintiff's negligence need not cause all of the plaintiff's injury to serve as a bar to recovery, as long as it causes some of the plaintiff's injury. It is not clear from the expert's testimony whether that rule would be applicable here. Hypothetically, if Hazen and Sawyer negligently provided misleading information to MCI and MCI was negligent in failing to realize that the information was misleading, it would appear that the doctrine of contributory negligence would be applicable, even if most of the damage was from Hazen and Sawyer's negligence. However, if Hazen and Sawyer's negligence caused MCI to spend additional money to pour concrete early in the construction process and a separate instance of MCI's negligence caused it to spend more money to pour concrete at a later time or a different location, the two episodes might be appropriately considered two different injuries. Mr. McCally's testimony is not sufficiently specific to distinguish between these two possibilities. Without additional information on how MCI's negligence contributed to the injuries caused by Hazen and Sawyer's negligence, the court is

13

unable to determine that contributory negligence bars recovery by MCI.

In light of these questions, the court will not conclude that the evidence establishes MCI's negligence clearly. The circumstances are not so exceptional that the issue should not be submitted to a jury. Thus, the court declines to grant summary judgment in favor of Hazen and Sawyer on the grounds of contributory negligence.

D. Rock Claims

Hazen and Sawyer has also moved for summary judgment on all of MCI's claims that rely on the existence of unforeseen rock at the construction site. Hazen and Sawyer argues that there is no evidence that it had knowledge of rock conditions at the site that it did not provide to MCI. The court is unable to determine from Hazen and Sawyer's memorandum whether this fact would entitle Hazen and Sawyer to summary judgment. As discussed above, in the context of damages, Local Rule 56.1 requires a party seeking summary judgment on a claim to set out the elements that the plaintiff must prove and to explain why the evidence does not support such a claim. Hazen and Sawyer has not provided a list of those claims to which it believes the presence or existence of rock is essential. The court has read the complaint and is aware of the issues regarding rock on the construction site. Nonetheless, this does not relieve Hazen and Sawyer of the

14

duty to explain to which claims this evidence is relevant and why the non-existence of evidence negates elements of those claims. The court finds that Hazen and Sawyer's brief does not demonstrate that evidence regarding rock entitles Hazen and Sawyer to summary judgment on any of its claims.

E. Tortious Interference with Contract

Hazen and Sawyer has also moved for summary judgment on MCI's claim of tortious interference with contract. The basis for this claim, as alleged in the Second Amended Complaint, is that Hazen and Sawyer intentionally provided false and misleading information to the City in order to induce the City to terminate the contract for cause and to prevent the City from paying MCI for certain legitimate expenditures. While expressing no opinion on whether the elements of the tort are met, Hazen and Sawyer claims that, as an insider to the contract, it has a qualified privilege to interfere in the contract.

To establish a prima facie case of tortious interference with contract, a plaintiff must show the following:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and

15

in doing so acts without justification; (5) resulting
in actual damage to the plaintiff.

United Labs. v. Kuykendall, 370 S.E.2d 375, 387 (N.C. 1988). A presumption of legal justification arises when a person alleged to have interfered is an "insider" to the contract. See Embree Const. Group, Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992) (indicating that a corporate officer was an insider who was presumed to have a privilege to interfere with the corporation's contracts). This presumption can be overcome by a showing that the insider act was not, in fact, justified by insider's status. Reichhold Chemicals, Inc. v. Goel, 555 S.E.2d 281, 289 (N.C. Ct. App. 2001). Such a showing is sometimes referred to as "legal malice." See id. ("We conclude that a showing of legal malice will defeat plaintiff's defense of justification."). Once the defendant has established insider status, the burden is on the plaintiff to come forward with evidence of legal malice. Varner v. Bryan, 440 S.E.2d 295, 297 (N.C. Ct. App. 1994).

Hazen and Sawyer claims to be an insider to the contract based on its role as the project engineer, and MCI does not contest the claim. The court agrees. Hazen and Sawyer was hired to administer the contract and oversee construction on behalf of the City. In this capacity, Hazen and Sawyer had a legitimate business interest in the fulfillment of the contract by MCI.

16

Thus, there is a presumption that Hazen and Sawyer was justified in taking actions that led to the termination of the contract.

Hazen and Sawyer also claims that the uncontroverted evidence demonstrates that there is no issue of fact regarding whether Hazen and Sawyer acted with legal malice. In support of this contention, it cites the testimony of MCI's former CEO, Clement V. Mitchell, who stated that he had no reason to question the integrity or professional ethics of Hazen and Sawyer's project manager, Robert DiFiore. The court agrees with MCI that this evidence is not dispositive on the issue of legal malice. It is possible that Mr. DiFiore acted with perfect professional integrity in the honest but mistaken belief that Hazen and Sawyer had legal justification to take the actions that it did. Mr. Clement's testimony is insufficient in addressing that or other possibilities for the court to conclude that it negates any evidence produced by MCI.

In opposition to Hazen and Sawyer's claim, MCI forecasts several pieces of evidence that it asserts demonstrate legal malice. Of most relevance here is a letter from Robert Conti, of Hazen and Sawyer, to Larry Harris, of MCI. MCI argues that this letter shows that Hazen and Sawyer, acting out of a desire to retaliate against MCI for MCI's public statements, deliberately withheld information that MCI needed to demonstrate to the City that project delays were not the result of MCI's misfeasance.

17

The court concludes that this is sufficient evidence of legal malice to withstand summary judgment. The letter is consistent with allegations of the complaint that Hazen and Sawyer provided false information to the City to induce MCI's termination. Under MCI's reading, it suggests that Hazen and Sawyer acted outside the bounds of its legal justification in its interaction with the City. Hazen and Sawyer disagrees with this reading, but the resolution of that dispute should be submitted to a jury. In light of this evidence, the court concludes that there is a material issue of fact regarding Hazen and Sawyer's legal malice; therefore, summary judgment is inappropriate on the basis of qualified privilege.

**IV. Conclusion**

For the forgoing reasons, the court concludes that Hazen and Sawyer has demonstrated that it is entitled to summary judgment only on the claim of unfair trade practices listed in the Second Amended Complaint as Count X.

IT IS ORDERED that Defendant's Motion for Summary Judgment [309] is GRANTED as to Count X and DENIED as to all other counts.

IT IS FURTHER ORDERED that Defendant's Second Motion for Summary Judgment [445] is DENIED.

This the 28th day of November 2005.

_____
United States District Judge