IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| MCI CONSTRUCTORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HAZEN AND SAWYER, P.C., a North Carolina Corporation and CITY OF GREENSBORO, NORTH CAROLINA, a municipality organized under the laws of North Carolina,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Nos. 1:99CV00002; 1:02CV00396<br><br>**CITY OF GREENSBORO'S MEMORANDUM IN SUPPORT OF APPLICATION TO CONFIRM ARBITRATION AWARDS AND MOTION FOR ENTRY OF JUDGMENT AGAINST NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA** |

The City of Greensboro ("City"), files this Memorandum in Support of its Application to Confirm Arbitration Awards and Motion for Entry of Judgment Against National Union Fire Insurance Company of Pittsburg, PA ("National Union").

**NATURE OF THE MATTER BEFORE THE COURT**

The City, National Union, and MCI Constructors, LLC ("MCI") agreed in January of 2006 to submit their disputes to final and binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., s*ee* Declaration of William Cary ("Cary Decl.") (Docket 512, filed in support of the City's Response to MCI's Motion to Vacate), ¶ 2, and executed an Arbitration Agreement (the "Agreement"). Ex. 1 (hereinafter, "¶" refers to said Declaration and "Ex." refers to exhibits attached thereto). The Agreement provides the following: "At the conclusion of the arbitration, the award shall be

confirmed and a judgment entered in the United States District Court for the Middle District of North Carolina." *Id.*, p. 4. The Arbitrators have conducted the arbitration and have entered a Liability Award (Ex. 37) and a Damages Award (Ex. 58). The City now seeks to have both Awards confirmed pursuant to 9 USC § 9 and requests entry of judgment in accordance with the terms of the Damages Award pursuant to 9 USC § 9 and, in the alternative, pursuant to this Court's inherent power to enforce the settlement agreement between the City and National Union.

**FACTS**

The long and complicated history of this case is detailed in the City's memorandum in Support of its Application to Confirm the Liability Award against MCI (Docket 528). With respect to this Application, the following facts are important.

In 1996, MCI and the City entered into a contract for construction work at the City's T.Z. Osborne Wastewater Treatment Plant (the "Contract"). National Union is the surety on the performance bond applicable to this public project, as required by North Carolina law, which bond incorporates the Contract and its obligations. "To prevent disputes and litigations," the Contract contained an alternative dispute resolution procedure calling for all disputes to be submitted to a Referee (the "Referee procedures")[1], whose decision "shall be final and conclusive". On June 16, 1998, the City terminated MCI's performance under that Contract (but did not terminate the Contract) and proceeded to finish the construction work under the Contract terms using

[1] The contract specifies that the Referee shall be the City Manager, and the Referee proceedings are frequently referred to as the City Manager hearings.

other contractors. MCI filed the present action for breach of contract without first submitting its claims to the Referee procedures.

This Court then entered a series of Orders enforcing the Contract provision requiring submission of all disputes to the Referee/City Manager. Ultimately, the City Manager (as the "Referee" under the Contract) conducted liability and damages hearings and awarded the City $13.4 million. MCI then filed a Second Amended Complaint (Docket 245) in an effort to avoid the Referee's awards. Pursuant to Rule 50, this Court granted the City judgment as a matter of law against MCI on the grounds that MCI could not forecast evidence of "fraud, bad faith or gross mistake" in the Referee awards. Docket No. 412. MCI filed a Rule 59 motion, making new arguments about its objections to the Referee proceeding and this Court entered its seventh Order, again rejecting MCI's contentions. Docket 425.

On March 10, 2004, this Court also entered summary judgment in favor of the City and against National Union and denied National Union's motions for summary judgment on all of its purported affirmative defenses. Docket 413.

National Union and MCI appealed. The Fourth Circuit affirmed the District Court's numerous orders that all disputes between MCI and the City fall within the Contract's alternative dispute resolution provision and hence were properly referred to the Referee/City Manager. Docket 432. The Court also affirmed summary judgment against National Union on all of its defenses. Finally, the Court ruled that the correct standard for reviewing the Referee's award was one of "reasonableness" (rather than

"fraud, bad faith or gross mistake") and remanded the case. After denying renewed cross motions for summary judgment by the City and MCI (Docket 462), this matter was set on for trial on February 6, 2006.

The New Arbitration Agreement. On the eve of the trial, the parties agreed to submit the already-created Referee record to a panel of three arbitrators (the "Arbitrators" or "Panel") who, solely on that record, would decide the liability and damage questions anew. Ex. 1. The Panel's decision, the parties agreed, would be "final and binding", *id*., p. 1, and "shall be confirmed and a judgment entered" in this Court. *Id*., p. 4. With respect to National Union, that Agreement provides the following:

> National Union by the execution hereof agrees to be bound to **pay any award** in favor of the City against MCI **within thirty (30) days of the arbitrators' award. National Union agrees not to further contest any issues raised in the pending litigation to date or in the Arbitration(s).**

*Id*. (emphasis added). To allow adequate time for the arbitration procedure to be completed, the parties filed a Joint Motion to Stay in which they represented to this Court that they have "entered into a binding Arbitration Agreement to resolve all issues between them currently pending in the Court" and that "[u]pon conclusion of the arbitration, all matters currently set for trial will be moot." Docket 490. This Court granted the motion, entered a stay (Docket 494) and later extended the stay "until the arbitration is complete." Docket 496.

The Agreement calls for a bifurcated arbitration (liability and damages). Ex. 1, p.2. The Panel conducted the liability hearings, ¶¶ 5-15, and rendered its

liability decision ("Liability Award") on June 20, 2007 (¶ 15; Ex. 37), finding that the termination of MCI's performance was for "for cause." MCI filed the Liability Award with this Court. Docket 499.

Following the Liability Award, the Damages Phase hearing described on pp. 2-3 of the Agreement (Ex. 1) was then conducted. ¶¶ 16-24. On April 17, 2008, the Panel issued their ruling ("Damages Award"), ruling as follows:

> The City is entitled to recover from MCI the sum of FOURTEEN MILLION NINE HUNDRED THIRTY-NINE THOUSAND AND FOUR DOLLARS ($14,939,004.00) with interest at the federal judgment rate from [February 5, 2003].

¶ 24; Ex. 58, p. 2[2]. Pursuant to 28 USC § 1961, the City understands that rate of interest to be 1.32%/year.

The City filed the Damages Award with this Court. Docket 503. Thereafter, MCI objected to the form of the Award and asked the Panel to correct what MCI characterized as a $9.6 million "computational" error. ¶ 25; Ex. 59. Even though the amount awarded was more than $2 million **less** than the City had claimed and believed it was entitled to, the City asked the Panel to deny MCI's motion and reaffirm the Damages Award. ¶ 26; Ex. 60. The Panel then issued its "Order of Arbitrators" dated May 8, 2008 (¶ 27; Ex. 61), which the City filed with this Court the same day (Docket 505). In that Order, the

[2] The Award grants interest from "the date of the City Manager's damages decision", as specifically allowed in the Agreement ["Interest shall accrue on the amount awarded to the City at the federal judgment rate from the date of the City Manager's damages decision (date)"]. Ex. 1, p. 3. The City Manager's damages decision was rendered on February 5, 2003. Docket 413, p. 3.

Arbitrators confirmed that there was no computational error in the Damages Award and reaffirmed the Arbitrators' right to elect the form of the award used.

Following receipt of the Damages Award and again following receipt of the confirmatory Order of Arbitrators, the City wrote to National Union's counsel reminding them of the terms of the Agreement requiring prompt payment. ¶ 28; Exs.62 and 63. The City has received no response to either letter and has not received any payment(s) from National Union. ¶ 28.

## QUESTIONS PRESENTED

1. **In light of National Union's waiver of its rights under 9 U.S.C. §§ 10 and 11, should the Arbitrators' Awards be confirmed and judgment entered against National Union?**

2. **In the alternative, should the Agreement be enforced as a settlement agreement and judgment entered against National Union?**

## ARGUMENT

### I. The Awards should be confirmed and judgment entered.

The Federal Arbitration Act ("FAA") provides a streamlined process for reducing an arbitration award to a final judgment.

> The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming that award, an order vacating it, or an order modifying or correcting it. §§ 9-11. An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court [footnote omitted]. § 6. Under the terms of § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10-11.

*Hall Street Assoc., LLC v. Mattel, Inc.*, ____ U.S. ____, 128 S.Ct. 1396, 1402 (March 25, 2008). The Court in *Hall Street* goes on to confirm that §§ 10 and 11 of the FAA provide the exclusive grounds for vacatur or modification. 128 S.Ct. at 1403.

In this case, National Union has specifically waived its right to seek vacatur or modification. "National Union agrees not to further contest any issues raised in the pending litigation to date or in the Arbitration(s)." Agreement, Ex. 1, p. 4 (emphasis added). In determining whether an agreement should be interpreted as including a waiver of right to appeal, normal contract interpretation rules apply:

> [A]s under general principles of contract law, our task is to "give ordinary words their ordinary meaning." *Internet East, Inc. v. Duro Communications, Inc.*, 146 N.C.App. 401, 553 S.E.2d 84, 87 (2001); *see also Harris v. Latta*, 298 N.C. 555, 259 S.E.2d 239, 241 (1979) [quotation omitted]; *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 127 S.E.2d 539, 541 (1962) [quotation omitted]. "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 467 S.E.2d 410, 411 (1996); *see also Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 348 S.E.2d 794, 796 (1986).

*DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551, 558 (2004) (interpreting settlement agreement as including waiver of appeal of certain, but not all, issues). The "plain language" and "ordinary meaning" of the terms of the Agreement here can have only one meaning: National Union will not "further contest" the Award, meaning it will not oppose confirmation and entry of judgment, will not seek vacatur or modification, and will not appeal.

"A contract not to appeal, if supported by consideration, is binding upon the parties to it." *Gramling v. Food Mach. & Chem. Corp.*, 151 F.Supp. 853, 856 (W.D. S.C. 1957) (parties contracted not to appeal from arbitration) (citation omitted). Such agreements are recognized with respect to both arbitration awards and judgments of a trial court. *See id.* (arbitration award); *U.S. Consol. Seeded Raisin Co. v. Chaddock & Co.*, 173 F. 577, 579 (9th Cir. 1909) (judgment of a court)[3]. If appeal is taken regardless, the appropriate remedy is dismissal of the appeal. *Acton v. Merle Norman Cosmetics*, 163 F.3d 605 (9th Cir. 1998) (unpublished, attached as Exhibit A); *see also Chaddock*, 173 F. at 579 ("[I]t seems to be universally held that, where such an agreement is made upon a valid and legal consideration, either before or after trial, it will be enforced in an appellate court, and the appeal, if taken, will be dismissed.") (citation omitted). National Union's waiver of its right to appeal is thus clearly enforceable.

Since National Union has agreed "not to further contest any issues raised in the pending litigation to date or in the Arbitration(s)," the City is entitled to prompt confirmation of both Awards and entry of judgment in accordance with the Agreement in order "to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall Street*, 128 S.Ct. at 1405.

The City anticipates that National Union will argue that the Awards are not final because MCI is contesting the Liability Award under § 10 (MCI's Motion to Vacate,

[3] Similarly, in the criminal context, plea bargains that include a waiver of appeal from sentencing are enforced. *See*, *e.g.*, *U.S. v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990) ("It is clear that a defendant may waive in a valid plea agreement the right of appeal . . . .").

Docket 497) and may file similar motions with respect to the Damages Award. The fact that MCI may attempt to continue this litigation does not change the fact that National Union agreed to pay promptly. National Union could have conditioned its obligation to pay, and the timing of that obligation, on confirmation of the Awards as against MCI, but it did not do so. Instead, it agreed to pay by a much earlier date: "within thirty (30) days of the arbitrators' award" (emphasis added), regardless of whether MCI attacks the Awards. Again, the "plain language" and "ordinary meaning" of the words of the Agreement can mean only one thing: pay now, not after some other contingency, unstated in the Agreement, has been satisfied.

As to National Union, the Damages Award is final, and National Union has agreed to pay without challenge.

## II. The Agreement is a settlement agreement, and the City is entitled to have it enforced by this Court as such.

If this Court concludes that the Damages Award cannot be separately confirmed under the FAA as to National Union prior to ruling on MCI's motion(s), judgment should nevertheless be entered promptly against National Union as enforcement of a settlement agreement. Otherwise, the City will be deprived of the benefit of the Agreement's requirement of prompt (indeed, now past due) payment.

As between the City, MCI and National Union, the Agreement is plainly a settlement agreement, providing for resolution of all issues. The parties affirmatively represented as much to this Court in their Joint Motion to Stay:

> [MCI, the City, and National Union] request that this action be stayed pending resolution of all outstanding issues between them through an agreed-upon arbitration. The parties state the following in support of this motion:
>
> . . .
>
> 2. MCI, the City, and National Union have entered into a binding Arbitration Agreement to resolve all issues between them currently pending in this Court . . .
>
> 3. Upon conclusion of the arbitration, all matters currently set for trial will be moot.

Docket 490 (emphasis added).

Being a settlement agreement, this Court has the inherent authority to enforce its terms. Where, as here, there is no factual dispute about the existence or terms of the agreement, the Court may enforce the agreement summarily:

> Trial courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing. *Millner v. Norfolk & W. R. Co.* 643 F.2d 1005, 1009 (4th Cir. 1981).

*Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988). *See also Young v. Fed. Deposit Ins. Corp.*, 103 F.3d 1180, 1194 (4th Cir. 1997). Arising from the court's equitable power, this authority allows for summary enforcement of the agreement. *Millner, supra*. The "practical effect" of a court exercising this authority "is merely to enter a judgment by consent." *Id.* That is, a settlement agreement may be enforced "within the context of the underlying litigation without the need for a new complaint." *Hensley v. Alcon Labs., Inc.* 277 F.3d 535, 540 (4th Cir. 2002).

Two preconditions to summary enforcement exist. The court must first ascertain whether the parties have in fact reached a settlement agreement. *Moore v. Beaufort*

*County*, 936 F.2d 159, 162 (4th Cir. 1991). Second, the court must be able to determine the terms of the agreement. *Id.*; *see also Hensley*, 277 F.3d at 540–41. If the court can ascertain both the agreement and its terms, summary enforcement is appropriate. *Hensley*, 277 F.3d at 540–41. A party merely "having second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement." *Young*, 103 F.3d at 1195.

Factual disputes concerning the existence of a settlement agreement or the terms of the agreement will require the court to conduct an evidentiary hearing. *See*, *e.g.*, *Hensley*, 277 F.3d at 541 ("Because the parties disagree over both the existence and terms of the settlement agreement . . . the district court could not summarily enforce the agreement."); *Williams v. Prof'l Transp. Inc.*, 388 F.3d 127, 131–32 (2004) (finding that a factual dispute as to the effective date of the settlement agreement precluded summary enforcement). However, interpretation of the terms of the agreement, like the interpretation of any contract, is a question of law for the court and does not preclude summary enforcement. *Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 613 (2002).[4]

[4] In *Williams*, the parties had reached a settlement agreement on May 23, 1977, which both parties sought to enforce. The terms included a payment by CSXT to Williams, an agreement that Williams and CSXT would enter into a new 5 year contract for Williams to provide certain transportation services, an agreement that CSXT would dismiss a utilities commission overcharge case then pending against Williams, and an agreement that Williams would continue to litigate its tariff clarification petition (concerning the rates charged CSXT), during the pendency of which CSXT would continue to pay according to Williams's previous billing practices. Negotiations for the new five year contract dragged on and, in May of 1998, CSXT filed a new utilities commission complaint to recover overcharges by Williams. Williams sought to enforce the settlement agreement, and CSXT contended that it never agreed to waive claims for

There is no dispute about the existence or terms of the settlement in this case: the parties agreed that MCI and the City[5] would submit the already-created Record to the new Panel of Arbitrators, who would make a new Liability Decision followed by a new Damages decision, and that National Union would then pay promptly and without contest any monetary award entered by the Panel against MCI. The Record was submitted, arguments made as specified in the Agreement, and Awards made. The only remaining term of the settlement to be enforced is payment by National Union.

Although the Agreement also contemplates confirmation of the award and entry of judgment, National Union's obligation to pay is not conditioned on those events. If, as National Union will undoubtedly argue, its obligation to pay should await confirmation (and, hence, resolution of any challenges MCI may interpose), the Agreement could and should have said so. It does not.

National Union's incentive not to pay promptly is obvious. Under 28 USC § 1961, interest is apparently only running at 1.32% per year. National Union can invest the $14.9 million it owes the citizens of Greensboro and earn significantly higher returns (even in the most conservative government backed securities, but more likely in the higher internal returns enjoyed by National Union and its parent AIG). For every **one**

---

overcharges after the date of the settlement (May 23, 1997). The district court interpreted the settlement agreement as prohibiting CSXT from refilling its overcharge claim. The court of appeals affirmed, holding that, since interpretation of a contract is a question of law, the district court had inherent authority to interpret and enforce the settlement summarily. It upheld the interpretation applying a *de novo* review standard and affirmed enforcement of the settlement on an abuse of discretion standard.

[5] National Union also waived its right to participate in the arbitration. Ex. 1, p.4.

percent over the federal judgment interest rate that National Union invests that $14.9 million, National Union will be earning nearly $150,000/year over and above the interest it will owe Greensboro. If this case had gone to trial in January of 2006 as scheduled, the City would have had its judgment[6] confirmed and collected by now, which is why it bargained for and got an agreement from the only party with funds[7] (National Union) to pay the arbitration award promptly. National Union has no reason to pay until forced, other than its agreement to do so. It has long ago proven that its bond is not its word, and vice versa, so its "agreement" to pay is worthless unless and until this Court forces it to honor that agreement.

This Court can enforce National Union's unambiguous promise to pay the Damages Award "within thirty (30) days of the arbitrators' award", and the City asks for entry of judgment accordingly.

**CONCLUSION**

It is not disputed that MCI is financially defunct and will never pay this or any other award. In the underlying Contract between the City and MCI, the performance of which National Union guaranteed, National Union's principal (MCI) promised to use the Contract's alternative dispute resolution procedure "to prevent disputes and litigations."

---

[6] The trial issue was limited to whether the Referee's award of $ 13. 4 million was "reasonable," a much more lenient standard than a *de novo* determination. The City was not contesting that it was too low (although it was nearly $3 million less than the City had claimed). Obviously, if this blue ribbon Panel of arbitrators thought the City should get MORE - $1.5 million more – the original award could not have been found to be unreasonably high.

[7] It is undisputed that MCI is financially defunct and cannot pay the Award.

MCI and National Union refused to consent voluntarily to that procedure and it took three lawsuits and more than a half-dozen orders of this Court to compel compliance with their word. On the eve of trial, National Union again gave its word – this time to honor the results of the agreed-upon arbitration without protest, and to pay the award within thirty days: "National Union agrees not to further contest any issues raised in the pending litigation to date or in the Arbitration(s)." It is past time to hold National Union to its word. The Awards should be confirmed and judgment entered against National Union in accordance with the terms of the Damage Award.

Respectfully submitted, this the 17th day of June, 2008.

/s/ William P.H. Cary
Michael D. Meeker, Esq.
N.C. State Bar No. 2964
George W. House, Esq.
N.C. State Bar No. 7426
William P.H. Cary, Esq.
N.C. State Bar No. 7651
Brooks Pierce McLendon Humphrey & Leonard, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420-6000
*Counsel for The City of Greensboro, North Carolina*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Memorandum In Support Of City Of Greensboro's Motion To Confirm Arbitration Awards And Enter Judgment Against National Union Fire Insurance Company Of Pittsburgh, PA has been electronically filed using the CM/ECF system, and the following parties were served via the Court's electronic notification system:

C. Allen Foster, Esq.
fostera@gtlaw.com
Eric C. Rowe, Esq.
rowee@gtlaw.com
David S. Panzer, Esq.
panzerd@gtlaw.com
Greenberg Traurig, LLP

Steve Pharr, Esq.
spharr@pharrlaw.com
Stacey D. Bailey, Esq.
sbailey@pharrlaw.com
Pharr & Boynton, PLLC

Thomas A. Farr, Esq.
thomas.farr@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

I also hereby certify that I have mailed the same document identified above to the following non-CM/ECF participants by depositing a copy of the same in the United States Mail, first class postage prepaid, addressed as follows:

Robert M. Moore, Esq.
Charles C. H. Lee, Esq.
Moore & Lee, L.L.P.
1750 Tysons Boulevard, Suite 1160
McLean, VA 22102-4225

John M. Gillum, Esq.
Manier & Herod
150 Fourth Avenue North, Suite 2200,
Nashville, TN 37219-2494

This the 17th day of June, 2008.

s/William P.H. Cary