IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| MCI CONSTRUCTORS, LLC<br>Plaintiff,<br>v.<br>HAZEN AND SAWYER, P.C.<br>    a New York Corporation and<br>CITY OF GREENSBORO, NORTH<br>CAROLINA,<br>    A Municipality, organized under<br>    The laws of North Carolina,<br>        Defendants. | CASE NOS. 1:99CV-00002;<br>1:02CV-00396 |

**MCI CONSTRUCTORS' RESPONSE TO CITY OF GREENSBORO'S APPLICATION TO CONFIRM ARBITRATION AWARDS AND MOTION FOR ENTRY OF JUDGMENT AGAINST NATIONAL UNION**

For the reasons stated herein, Plaintiff MCI Constructors LLC ("MCI") respectfully requests that the Court deny the City of Greensboro's ("the City") Application To Confirm Arbitration Awards and Motion For Entry Of Judgment Against National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

**I. NATIONAL UNION'S AGREEMENT "TO BE BOUND TO PAY" REAFFIRMS ITS OBLIGATION, AS PERFORMANCE BOND SURETY, TO PAY THE AWARD IF MCI DOES NOT, AN EVENT THAT CANNOT OCCUR UNLESS AND UNTIL PENDING CHALLENGES TO THE ARBITRATION AWARD ARE DECIDED.**

The City contends that it is entitled to an immediate judgment against National Union -- regardless of the outcome of the motions currently pending before the Court. No basis in law or fact exists for this contention. As MCI's performance bond surety, National Union stands as nothing more than a guarantor of MCI's obligation to pay. So long as the challenges to the arbitrators' award remain undecided by this Court, MCI's ultimate liability to the City (the obligation to which National Union is bound) also

remains undecided. As a result, National Union is not, and cannot currently be, in breach of any obligation to the City.

MCI was a general contractor hired by the City on a construction project. National Union, as surety, issued a performance bond to the City, as obligee. The performance bond obligated National Union to perform if its principal, MCI, did not. Under the terms of the bond, MCI and National Union were both bound to pay sums owed to the City if MCI did not perform all of the undertakings, covenants, terms, conditions and agreements of MCI's contract with the City:

> [W]e, the PRINCIPAL and SURETY above named, are held and firmly **bound** unto the above named CONTRACTING BODY … in the penal sum of the amount stated above …**for the payment** of which sum … we bind ourselves….

Docket 207 at pages C-9 to C-10 (emphasis added).[1] The language contained in the bond, including the specific statement that the surety is bound to pay the penal sum, is prescribed by statute because the City is a governmental body. *See* N.C. Gen. Stat. § 44A-33(a) (prescribing bond language) § 44A-30 (bond conclusively presumed to have been given pursuant to statute).

In Henry Angelo & Sons, Inc. v. Property Development Corporation, 63 N.C. App. 569, 306 S.E.2d 162 (1983), the Court of Appeals described the relationship between principal, surety, and obligee, stating that the surety is "bound to pay" if the principal does not:

> A contract of suretyship is "[a] lending of credit to aid a principal having insufficient credit of his own; the one expected to pay, having the primary

---

[1] The bond is a contract to which MCI is a party. MCI is also a party to the agreement pursuant to which the City seeks judgment against National Union. Further, because MCI is the principal and National Union is the surety, the ultimate liability rests with MCI and MCI is obligated to indemnify National Union. The facts give MCI standing to object to anything the City does *vis a vis* National Union.

2

obligation, being the 'principal,' and the one **bound to pay**, if the principal does not, being the 'surety.'"

63 N.C. App. at 574, 306 S.E.2d at 166, *quoting* Black's Law Dictionary 1611 (rev. 4th ed. 1968) (emphasis added).

As with any contract reflecting a suretyship relation, the contract at issue here obligates the surety to be bound to pay:

> National Union by the execution hereof agrees **to be bound to pay** any award in favor of the City against MCI within thirty (30) days of the arbitrators' award.

Docket 498, Exhibit 1, Arbitration Agreement, at 4. National Union's agreement to be bound to pay does nothing more than restate the relationships of the parties.

An agreement "to be bound to pay" differs from an agreement "to pay." An agreement "to be bound to pay" recognizes the difference between primary liability and secondary liability; in laymen's terms, the difference between a principal debtor and a guarantor. Inherent in the agreement "to be bound to pay" is the basic tenet that the surety cannot be called upon to pay until the principal's obligation (i.e., the obligation to which the surety is "bound") has been established.

The City now pretends that the words "to be bound to" do not appear in the agreement. In its correspondence to National Union, the City omits the phrase and, in the City's representations to the Court, the words are missing. *See*, *e.g.*, Docket 512, Declaration of William Cary at 14 ¶ 28 ("On April 23, 2008, counsel for the City wrote to National Union's counsel … reminding National Union of its obligation to "pay any award in favor of the City against MCI within thirty days of the arbitrators' award.").[2]

---

[2] The City's brief cites to ¶ 28 of the Cary Declaration. MCI has moved to strike the Cary declaration, Docket 533, and this statement demonstrates again why Mr. Cary's testimony must be stricken. While Mr. Cary asserts that he is just reciting facts that cannot be disputed, his declaration omits the phrase "to be bound to." The City argues that the words "bound to" have no meaning and that an agreement to be "bound to pay"

3

The phrase "within thirty (30) days of award" does not change the analysis. In the absence of a time-of-the-essence clause in the contract, the reference to thirty days does nothing more than recite the expectations of the parties as to timing, *see* <u>Fletcher v. Jones</u>, 314 N.C. 389, 393-394 333 S.E.2d 731, 735 (1985), particularly if there had been no circumstances that would have resulted in proceedings in this Court to vacate the award. Because the agreement binds National Union to MCI's obligation, the thirty day time limit is excused so long as MCI's obligation to pay is excused. In any event, the agreement obligates National Union "to be bound to pay" and obviously refers to an award that is final and binding. Surely, even the City would not argue that, if the arbitrators revised the existing award or the Court vacated any ultimate award, National Union would still be obligated to pay the current award that is under challenge!

## II. NATIONAL UNION IS NOT A PARTY TO THE PORTIONS OF THE "ARBITRATION AGREEMENT" THAT INVOLVE ARBITRATION.

The City asserts that the arbitration award can be confirmed as a judgment against National Union under § 9 of the Federal Arbitration Act. That argument assumes than an agreement to arbitrate exists between the City and National Union and that an arbitration award has been rendered against National Union. Neither premise is correct. The entire agreement between the City and National Union is as follows:

> National Union may attend but shall not participate in the arbitration. National Union by the execution hereof agrees to bound to pay any award in favor of the City against MCI within thirty (30) days of the arbitrators'

---

(which ties the surety's liability to that of the principal) is the equivalent of an agreement "to pay" irrespective of the liability of the principal. It is not proper for Mr. Cary to present his argument as an advocate in the form of sworn testimony to facts to which he attests as a witness. Nor can the impropriety in the Cary Declaration be avoided by the assertion that Mr. Cary is merely accurately quoting the City's letter to National Union. The facts are disputed and Mr. Cary cannot act both as a witness and advocate at the same time.

4

> award. National Union agrees not to further contest any issues raised in the pending litigation to date or in the Arbitration(s).

Docket 498, Exhibit 1, Arbitration Agreement at 4. There are no other provisions in the agreement relating to National Union; there is no award against National Union.

The agreement to arbitrate involved in the case existed between the City and MCI, and National Union is not a party to it. The agreement provided that "[e]ach party shall appoint one neutral…" National Union, not being a "party," was not allowed to select an arbitrator. The agreement provided that "each party" was allotted three hours for opening statements in the Termination Phase. National Union, not being a "party," was not allowed to make any opening statements. The agreement provided that "[e]ach party shall have six hours of closing arguments" in the Termination Phase. National Union, not being a "party;" was not allowed to make any closing arguments. Following the Termination Phase, the agreement provided that "the second issue will be what amount should either partly [sic] recover." National Union, not being a "party" was not within the phrase "either [party]." No claims by or against National Union were presented to or decided by the arbitrators. The arbitrators rendered no award against National Union. National Union did not agree to arbitrate any claims by or against it and was not a party to the arbitration.

Indeed, upon "confirmation of the award," the City is obligated to dismiss all claims against MCI; but is not obligated to dismiss any claims against National Union. The agreement thus contemplates that the City's claims against National Union may continue, which is not consistent with the City's current argument that judgment may summarily be entered against National Union.

Further, the City contends that National Union has waived all claims and defenses. But National Union actually agreed "not to contest any issues raised in the pending

5

litigation <u>to</u> <u>date</u>," which was not an agreement to waive any issues raised in the litigation <u>subsequently</u>. Similarly, National Union's agreement not to further contest any issues raised "in the Arbitration(s)" does not extend to issues raised in this Court and outside the arbitration proceeding itself, such as whether the award properly draws its essence from the contract, whether the arbitrators acted in manifest disregard of the law in their award, or whether the City committed a material breach of its agreement so as to excuse National Union from further performance. In no event could National Union's agreement not to contest any issues in the litigation or the arbitration constitute a license to the City to breach the terms of its agreement, including the implied covenant of good faith and fair dealing, and deprive National Union of the opportunity to contest such a breach.

**III.    THE CITY'S CLAIMS AGAINST NATIONAL UNION ARE BARRED BY UNCLEAN HANDS.**

Because there exists no arbitration award against National Union that can be confirmed as a judgment against National Union, the City next contends that the agreement signed by National Union is a "settlement agreement" that the Court can summarily enforce.

As the City concedes, however, the Court's authority to enforce settlement agreements reached in the litigation pending before it arises from the Court's <u>equity</u> jurisdiction. City Brief at 10 ("Arising from the court's equitable power, this authority allows for summary enforcement of the agreement.") (emphasis omitted). As a result, along with the benefits of equity jurisdiction is the requirement that "He who comes into equity must come with clean hands." <u>Keystone Driller Co. v. General Excavator Co.</u>, 290 U.S. 240, 241 (1933). As the Court explained:

> "It is one of the fundamental principles upon which equity jurisdiction is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but
6

> he must come into court with clean hands. He must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." Story's Equity Jurisprudence (14th Ed.) s 98. The governing principle is "that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to intervene on his behalf, to acknowledge his right, or to award him any remedy." Pomeroy, Equity Jurisprudence (4th Ed.) s 397.

290 U.S. at 244-245. In <u>Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.</u>, 324 U.S. 806 (1945), the Court explained:

> This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for enforcing the requirements of conscience and good faith.

324 U.S. at 814. To establish the defense of unclean hands, it is not required to establish that the City engaged in criminal conduct, or even conduct sufficient to sustain other legal proceedings. <u>Parsons v. Jefferson-Pilot Corp.</u>, 141 F.R.D. 408, 413 (M.D.N.C. 1992). Instead, conduct that the court finds to be unconscionable, in bad faith, or in transgression of equitable standards may suffice to support the defense. <u>Id.</u>, at 414. In <u>Minnesota Muskies, Inc. v. Hudson</u>, 294 F.Supp. 979 (M.D.N.C. 1969) Judge Stanley recited:

> He who has acted in bad faith, resorted to trickery and deception, or be guilty of fraud, injustice or unfairness will appeal in vain to a court of conscience, even though he may have kept himself strictly "within the law." Misconduct which will bar relief in a court of equity need not necessarily be of such nature as to be punishable as a crime or to constitute the basis of legal action. Under this maxim, any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean.

7

294 F.Supp. at 987-988, *quoting* Weegham v. Killifer, 315 F. 168 (W.D. Mich.) *aff'd* 215 F. 289 (1914).

Unclean hands operate to bar a claim if the inequitable conduct has an immediate and necessary relation to the matter in litigation. Parsons, *supra*, 141 F.R.D. at 414. Here, the matter in litigation is the City's attempt to enforce arbitration awards against National Union -- arbitration awards that directly resulted from inequitable conduct of the City.

MCI thought it had bargained for a proceeding in which both MCI and the City would present their competing arguments about the facts and the law to a panel of neutrals who would decide the issues *de novo*. From nearly the moment the arbitrators were appointed, however, the City began a near-constant refrain that MCI was in breach of the arbitration agreement by asking the arbitrators to consider the issues *de novo*. Because its accusations of breach had no basis in fact or in the contract, the City's repeated and constant accusations that MCI was acting in breach of the arbitration agreement violated the City's obligations to act in good faith.

> *d. Good faith performance.* Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

Restatement (Second) Contracts § 205, comment d. The City's persistent "performance" in the arbitration proceedings falls squarely within this description of bad faith. Having argued to the arbitrators that MCI was not entitled to argue the facts of the case *de novo*, the City comes to this Court asserting that that the arbitration agreement did in fact

8

provide for "a *de novo* factual determination by an arbitration panel." Docket 540, City Memorandum in Support of Motion to Confirm Damages Award at 11 (emphasis in original).

When MCI suggested that the Panel focus on the dispositive legal issues first, and provided to the Panel a memorandum explaining those issues, the City loudly accused MCI of the "unilateral filing of a brief," demanding that the arbitrators refuse to read it. Docket 498, Exhibit 3.

When MCI pointed out that additional briefing was appropriate because the City's claim (i.e., the City's prior briefing) had largely been based upon a factual conclusion that the City's own expert had testified to the City Manager was invalid, Docket 498, Exhibit 5, the City demanded that the Panel "disregard MCI's ex parte communications." Docket 498, Exhibit 6.

At the conclusion of the Termination Hearing, the City asserted that its contractual right to go first and last entitled it to present its entire argument when it went "last" -- to which MCI was not allowed to respond -- and then proceeded to misrepresent material facts to the arbitrators. *See* Docket 498, Memorandum In Support of MCI's Motion To Vacate at 5-10, and exhibits cited; Docket 531, Reply Brief In Support Of MCI's Motion To Vacate Liability Award , and exhibits cited.

The City repeatedly accused MCI of raising "new issues," but the record before the arbitrators does not reveal any instance when the City actually identified a specific issue that it contended was a "new issue." On this basis, the City objected to MCI's opening statement before MCI spoke the first word of it. When the City finished its opening statement on damages, the City insisted that the Panel adjourn the proceeding before hearing from MCI. Docket 522, Exhibit 43B, Tr. at 148-149. At the conclusion

of MCI's opening statement on damages, the City asserted that "about 95 percent of what you heard today were -- is new material," and moved to strike MCI's entire opening statement. Docket 522, Exhibit 43H, Tr. at 522. After MCI was given an opportunity to respond and explained, in writing, how none of its presentation was "new," Docket 524, Exhibit 46, the City withdrew its motion rather than respond to it. Docket 524, Exhibit 49.

The City's loudest complaint arose when MCI set out to compare the terms of the completion contracts to the actual invoices submitted by the completion contractors, all of which were in the stipulated record submitted to the arbitrators. If its case was sound, the City should have had nothing to fear from such a comparison. After all, Hazen & Sawyer, acting as the City's agent, should have done that comparison when the work was done and it advised the City to pay the completion contractors. After that, Hazen & Sawyer was supposed to have reviewed the City's claim against MCI for "reasonableness," which, in part, required a determination as to whether the costs were properly chargeable to MCI. Docket 207, Contract, General Conditions, Article 15.2. Further, both the Contract and the law required the City to have allocated its post termination expenses into chargeable and non-chargeable items. Biemann & Rowell Co. v. Donohoe Cos., 147 N.C. App. 239, 244, 556 S.E.2d 1, 5 (2001) (no recovery permitted if required allocation is not done); RPR & Associates, Inc. v. University of North Carolina, 153 N.C. App. 342, 570 S.E.2d 510 (2002) (same). If all these things had actually been done, the City should have welcomed a review of the specific invoices, which could only confirm the validity of its claim.

But those things that should have been done had not in fact been done, and the City had plenty to fear from a review of the actual invoices. Hazen & Sawyer had not

10

actually compared the invoices to the terms of the completion contracts when the work was done, with the result that the completion contractors egregiously overcharged the City on literally thousands of occasions. *See generally* MCI Opening Tab 4. With no cost controls in place, Haren's estimated cost of $3.838 million mushroomed into total payments by the City of more than $9.4 million. Id.

In fact, Hazen & Sawyer had not reviewed the backup for the City's <u>claim</u> against MCI at all. For example, when asked about the City's claim of nearly a million dollars for Hazen & Sawyer's own fees, Hazen & Sawyer testified that "our fees were of course reasonable," Docket 332, Rule 30(b)(6) Deposition of Hazen & Sawyer at 47, but no review of the City's claim had actually been made. When that review was made (by MCI), it was discovered that the City had included in its claim against MCI (and National Union) amounts paid to Hazen & Sawyer for work on other projects (not chargeable to MCI), amounts that the City would have incurred anyway in the absence of termination (not chargeable to MCI), and amounts for work never performed at all by anyone (not chargeable to MCI). *See* MCI Opening Tab 3.[3]

When it should have had nothing to fear, the City instead undertook to prevent MCI from presenting its contentions to the arbitrators. The Arbitration Agreement provided for opening statements and closing arguments, the purpose of which was to give the arbitrators a guided tour of the arguments and evidence. The City contended that

---

[3] Had the City been making a claim on an insurance policy, no one would contend that the City was within its rights in pursuing a claim to recover damages it had not in fact suffered. Indeed, pursuing a false claim against an insurance policy is a Class H felony. N.C.Gen.Stat. § 58-2-161(b). While a surety bond is not an insurance policy, *see* <u>Harry Angelo</u>, *supra*, the equitable principles underlying the criminal statute are fully applicable here. The third party which has bound itself to pay is entitled to good faith conduct from the person making the claim.

11

MCI should be prohibited from discussing individual invoices. Docket 522, Exhibit 43A, Tr. at 30 ("MR MEEKER: …you may take a tour through those invoices, but it will be an unguided tour…"). To support its contention that MCI was to blame for the City's inability to explain why the costs it was claiming were proper, the City also represented to the Panel that MCI had previously been repeatedly instructed by the City Manager to advance all of its objections to every invoice:

> [MR. CARY:] George, if I make one other point, at the hearing, repeatedly, Mr. Kitchen said, if you want me to look at these paper, show it to me now and tell me what your problem with it is. He said it repeatedly.

Id., 8/2/07 Hearing Tr. at 20. In actuality, no such instruction was ever given by the City Manager, repeatedly or at all.

When the panel allowed MCI to file a written response, the City asked the Panel not to begin its review of MCI's submission until the City responded, asked for and received additional time to respond, and then withdrew its objections altogether to avoid having to explain what issues it actually believed to be "new." Docket No. 535, MCI's Motion to Remand, Exhibit 6 and 7, Docket 524, Exhibit 49.

Perhaps, however, the most inequitable of all the City's conduct was its refusal to remove from its claim those expenditures that it knew were not, under any circumstances, recoverable from MCI (and National Union). For example, the City had required the completion contractors to track sales taxes paid, so that the City could receive a refund of those taxes from the State of North Carolina under N.C. Gen. Stat. § 105-164.14. Because sales taxes had already been reimbursed to the City, they were not a damage or expense recoverable from MCI. Good faith obligated the City to remove the sales taxes from its claim, but the City never did so. *See* MCI Opening Tab 4, pages 37-45. Instead, the City cried "foul" when MCI raised the issue.

12

The City's contracts with the completion contractors had required the completion contractors to correct mistakes in their own work at their own cost. Instead, when the completion contractors made mistakes, the City paid them to fix their own mistakes, and thereafter charged MCI (and National Union) for both the mistake and the correction. *See* MCI Opening Tab 4, pages 115-149.

The City negotiated an agreement from the completion contracts that rental charges on the contractor's equipment and vehicles would include fuel and maintenance. When the completion contractors charged fuel and maintenance in addition to the rent, the City never objected. Instead, it sought to pass on the overcharges to MCI (and National Union). *See* MCI Opening Tab 4, pages 74-100.

Thus, the City comes this Court demanding fairness, but the City's conduct has been anything but fair. And under those circumstances, even if the Arbitration Agreement between MCI and the City is a "settlement agreement" (which it is not), the City is not entitled to the equitable remedy of enforcement.

## IV. THE COURT MUST CONVENE AN EVIDENTIARY HEARING OR TRIAL TO RESOLVE THE DISPUTED FACTUAL ISSUES.

The City concedes that "[f]actual disputes concerning the existence of a settlement agreement or the terms of the agreement will require the court to conduct an evidentiary hearing." City Brief at 11, *citing* Hensley v. Alcon Labs., Inc., 277 F.3d 535, 541 (4th Cir. 2002) ("Because the parties disagree over both the existence and terms of the settlement agreement … the district court could not summarily enforce the agreement"). Here, there are serious disputes both about the terms of the agreement itself, as well as the breach of the agreement by the City.

13

## CONCLUSION

The City's application to have judgment entered against National Union must be denied. Judgment cannot be entered immediately because the obligation to which National Union is bound has not yet been decided by this Court. Judgment cannot be entered at all because the City has not come into equity with clean hands.

Respectfully submitted this 10th day of July, 2008

    /s/ Eric C. Rowe
C. Allen Foster (N.C. Bar No. 1499)
Eric C. Rowe (N.C. Bar No. 10713)
David S. Panzer
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3100
E-mail: rowee@gtlaw.com

Charlie C.H. Lee
Moore & Lee, LLP
1750 Tysons Boulevard, Suite 1160
McLean, VA 22102-4225
(703) 506-2050
*Counsel for MCI Constructors, LLC*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| **MCI CONSTRUCTORS, LLC**, <br>      *Plaintiff*, <br><br> v. <br><br> **HAZEN and SAWYER, P.C.**, <br>      -and- <br> **CITY OF GREENSBORO, NORTH CAROLINA**, <br>      *Defendants*. | **CASE NOS. 1:99CV-00002;** <br> **1:02CV-00396** |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on July 10, 2008, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Hazen & Sawyer, P.C.; The City of Greensboro, North Carolina; and National Union Fire Insurance Company of Pittsburgh, PA.

Respectfully submitted,

/s/ Eric C. Rowe
Eric C. Rowe (N.C. Bar No. 10713)
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3100
E-mail: rowee@gtlaw.com

15