IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MCI CONSTRUCTORS, INC. | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:99CV2 |
| HAZEN AND SAWYER, P.C. | ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| MCI CONSTRUCTORS, INC. | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:02CV396 |
| CITY OF GREENSBORO, N.C. | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

On September 17, 2008, MCI Constructors LLC moved to vacate an arbitration award which found that the City of Greensboro did not wrongfully terminate its performance under a construction contract entered by the parties. (1:99-cv-2, Doc. 497); (1:02-

cv-396.)[1] For the reasons set forth herein, MCI Constructors LLC's Motion to Vacate is DENIED.

**I. Facts**

The general background of this case has been set forth in the previous memorandum opinions associated with this matter dated March 24, 2000, October 6, 2000, January 18, 2001, September 6, 2001, and November 1, 2002.[2]

On January 26, 2006, the City of Greensboro, North Carolina (hereinafter "Defendant" or "City"), MCI Constructors LLC (hereinafter "Plaintiff" or "MCI"), and National Union Fire Insurance Company of Pittsburgh (hereinafter "National Union") notified the court that they had entered into an arbitration agreement (hereinafter the "Arbitration Agreement") to resolve all outstanding issues between the parties arising out of a construction contract (hereinafter the "Contract") dispute. In relevant part, the Arbitration Agreement provided:

---

[1] This court notes that MCI's motion to vacate was clearly intended to be filed in both cases (1:99-cv-2 and 1:02-cv-396), as shown by the case numbers on the caption of the motion. However, MCI's motion was filed on CM/ECF in the 1:99-cv-2 case only. Because City responded to the motion in both cases, this court takes notice of the apparent oversight and deems the motion to be filed in both cases. Further, the docket numbers noted in the remainder of this memorandum opinion refer to documents associated with case number 1:99-cv-2, not case number 1:02-cv-396.

[2] The Honorable William L. Osteen, Sr. presided over this case until September, 2007. Subsequently, Judge Osteen, Sr. retired and the case was ultimately assigned to the undersigned court.

1.   The "[a]rbitration will be final and binding," and "will be pursuant to the Federal Arbitration Act" (hereinafter the "FAA").  (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 1.);

2.   The proceeding "would be bifurcated between liability and damages."  (Id. at 1-2.);

3.   "The initial liability issue is whether MCI's performance was wrongfully terminated by the City ([Liability] Phase)," (Id. at 2), or in other words, "was the termination of MCI's performance for cause or convenience?"  (Id. at "STIPULATED SUBMISSION TO PANEL OF ARBITRATORS" ¶ 9.);

4.   "The evidence submitted to the arbitration on [the liability] issue shall be limited to the materials tendered to the City Manager at his hearing on termination . . . ."  (Id. at 2.);

5.   "Each party shall have six hours of closing arguments . . . . City shall be entitled to go first and last in closing arguments."  (Id.); and

6.   "At the conclusion of the arbitration, the award shall be confirmed and a judgment entered in the U.S. District Court for the Middle District of North Carolina."  (Id. at 4.) Subsequent to agreeing to arbitrate their claims, the parties filed a joint motion to stay the action pending the conclusion of arbitration.  (Doc. 490.)  The court granted the parties motion

3

to stay the matter on February 7, 2006. (Order dated 2/7/2006 (Doc. 494).)

After the parties' motion to stay the matter was granted, an arbitration proceeding was conducted before a three-member panel of arbitrators (hereinafter the "Panel") in accordance with the terms of the Arbitration Agreement. Upon completion of the first phase of the proceeding (hereinafter the "Liability Phase"), the Panel found that City's termination of MCI's performance was "for cause" (hereinafter the "Liability Award"). (Notice of "Arbitration Award" & Mot. to Continue Stay in Place Until Completion of the Entire Arbitration Proceeding Ex. A (Doc. 499-2) at 2.) Before the parties concluded the second phase of the arbitration proceeding (hereinafter the "Damages Phase"), MCI moved to vacate the Liability Award. (Doc. 497.)[3]

## II. Legal Standard

"The process and extent of federal judicial review of an arbitration are substantially circumscribed." Patten v. Signator Ins. Agency, 441 F.3d 230, 234 (4th Cir. 2006). "[I]n reviewing arbitral awards, a district court . . . is limited to determining whether the arbitrators did the job they were told to do--not whether they did it well, or correctly, or reasonably, but simply

---

[3] Following the culmination of the Damages Phase the Panel found that City was entitled to recover $14,939,004.00 from MCI (hereinafter the "Damages Award"). (Def.'s Notice of Arbitration Award Ex. A (Doc. 503-2) at 2.)

4

whether they did it." Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994) (quotation marks and citation omitted). "An arbitration award is enforceable even if the award resulted from a misinterpretation of the law, faulty legal reasoning, or erroneous legal reasoning." Genus Credit Mgmt. Corp. v. Jones, No. JFM-05-3028, 2006 U.S. Dist. WL 905936, at *2 (D. Md. Apr. 6, 2006) (citing Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991)). "In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." Choice Hotels Int'l, Inc. v. S.M. Prop. Mgmt., LLC, 519 F.3d 200, 207 (4th Cir. 2008) (citation and quotation marks omitted).[4]

---

[4] The FAA provides that an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(4).

## III. Discussion

MCI has moved to vacate the Liability Award on the grounds that (1) the Panel exceeded its powers, (2) the Panel refused to hear evidence proffered by MCI and did not allow MCI to meaningfully respond to City's closing arguments, (3) City obtained the Liability Award by undue means, and (4) City breached the Arbitration Agreement. (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 1.)[5]

### 1. Panel's Powers

Section 10(a)(4) of the FAA provides that a court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In the present case, MCI argues that the Liability Award should be vacated because the Panel exceeded its powers by entering two awards rather than one. (Pl.'s Mem. in Support of Mot. to Vacate (Doc. 498) at 12-14.) MCI contends that a provision in the Arbitration Agreement that stated that "<u>the award</u> shall be confirmed" at the end of the arbitration

---

[5] The fact that MCI made different arguments in its motions to vacate the liability and damages awards suggests that it views the awards as legally distinct. However, if the awards were distinct, vacatur of the Liability Award would not in and of itself alter MCI's obligation to pay City $14,939,004.00 in accordance with the Damages Award. The court finds that the awards are not distinct in that they are merely the reasonably bifurcated determination of the parties' claims.

6

proceeding prohibited the Panel from entering separate awards at the conclusion of the liability and damages phases. (Id. at 14 (quoting Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 4) (emphasis added).)

The court rejects MCI's argument that the Liability Award should be vacated because its issuance was not specifically called for in the Arbitration Agreement. MCI's section 10(a)(4) argument is merely a thinly-veiled contention that the Panel misread the Arbitration Agreement. MCI does not argue that the Panel was not empowered to determine whether City breached the Contract.[6] Instead, MCI points to the Arbitration Agreement and maintains that the Panel should have temporarily refrained from advising the parties how it resolved the breach of contract issue.

Even assuming, arguendo, that MCI is correct in its contention that the Arbitration Agreement limited the form in

---

[6] The breach of contract issue is the sole subject matter of the Liability Award. (Notice of "Arbitration Award" & Mot. to Continue Stay in Place Until Completion of the Entire Arbitration Proceeding Ex. A (Doc. 499-2) at 2.) The parties specifically asked the Panel to resolve the issue, (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 2), and resolution of the issue was a necessary predicate to the Panel's damages determination. Accordingly, the court finds that the breach of contract issue was legitimately placed before the Panel by the parties, thus the Panel did not "exceed its powers" by ruling on the issue. See Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 532 (4th Cir. 2007) (holding that an arbitrator did not exceed his power by deciding upon claims that he was entitled to conclude were legitimately before him for resolution).

7

which the Panel could render its decisions, vacatur is not warranted. Both the Supreme Court and the Fourth Circuit have held that an arbitration award may not be vacated merely because the court concludes that the arbitrator misinterpreted the arbitration agreement. See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on a misinterpretation of the contract."); Patten, 441 F.3d at 238 ("We have squarely held that as a 'matter of law,' an award cannot be vacated on the basis of the 'misinterpretation of the contract.'" (citation omitted)). Although an arbitrator's conscious disregard of procedural rules contained in an arbitration agreement might be a basis for vacatur, MCI has offered no evidence to support such an allegation. See Patten, 441 F.3d at 235 (stating that an award may be vacated where "[the] arbitrator based his award on his own personal notions of right and wrong"); Remmey v. PaineWebber, Inc., 32 F.3d 143, 149 (4th Cir. 1994) (noting that an award can be vacated for "manifest disregard" where the "arbitrators understand and correctly state the law, but proceed to disregard the same" (quotation marks and citation omitted)).

8

### 2. Panel's Procedural Rulings

An arbitration award may be vacated pursuant to section 10(a)(3) of the FAA "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy[.]" 9 U.S.C. § 10(a)(3). However, an arbitrator's mere refusal to accept evidence tendered to him or her is not grounds for vacatur. Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co., 232 F.3d 383, 389 (4th Cir. 2000). "An arbitrator typically retains broad discretion over procedural matters and does not have to hear every piece of evidence that the parties wish to present." Id. "A federal court is entitled to vacate an arbitration award only if the arbitrator's refusal to hear pertinent and material evidence deprives a party to the proceeding of a fundamentally fair hearing." Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 531 (4th Cir. 2007). "[A]n arbitrator's procedural ruling may not be overturned unless it was in 'bad faith or so gross as to amount to affirmative misconduct.'" Marrowbone, 232 F.3d at 389 (quoting Misco, 484 U.S. at 40).

Here, MCI argues that the Liability Award should be vacated because the Panel declined to accept additional briefs and evidence MCI tendered to the Panel for its consideration. (Pl.'s Mem. in Support of Mot. to Vacate (Doc. 498) at 4-7, 11, 14-15.) Further, MCI contends the award should be vacated because the

9

Panel did not allow MCI to meaningfully respond to City's two-part closing presentation after City withheld the substance of its closing arguments until the final portion of its presentation. (Id.)  The court finds that MCI's section 10(a)(3) arguments are without merit.

The Panel's procedural rulings regarding MCI's submissions were not made in bad faith so as to amount to affirmative misconduct.  Although the Panel did in fact decline to accept several of MCI's submissions, the Arbitration Agreement expressly provided that "[t]he evidence submitted to the arbitration panel on [the liability] issue shall be limited to the material [previously] tendered to the City Manager . . . ."  (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 2.)  If MCI wanted the Panel to consider both evidence that was and was not tendered to the City Manager it could have included a provision to that effect in the Arbitration Agreement.  See First Options of Chi. Inc. v. Kaplan, 514 U.S. 983, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties."); Misco, 484 U.S. at 39 ("The parties bargained for arbitration to settle disputes and were free to set the procedural rules for arbitration to follow if they chose.").  MCI and City contracted for, and Arbitration Agreement provides for, procedures of evidentiary review by prior submissions.  MCI and City received the application of the very evidentiary procedures for which they

10

contracted.  Contrary to MCI's suggestion, the Panel "d[id] not have to hear every piece of evidence that the parties wish[ed] to present" and was not required to accept the additional briefs MCI tendered.  See Marrowbone, 232 F.3d at 389.  MCI has offered no evidence indicating that the Panel unfairly rejected any of its submissions, such that MCI was deprived of a fundamentally fair hearing.  Of particular note, there is no evidence that the Panel accepted submissions from City that were analogous to submissions it rejected from MCI.  It appears that the Panel applied the procedural rules outlined in the Arbitration Agreement in good faith and in an unbiased manner.

Likewise, the Panel's decision to not allow MCI to respond to the final portion of City's closing presentation was not tantamount to affirmative arbiter misconduct.  Once more, the Arbitration Agreement set the procedural rules the arbitrators were to apply, the Panel applied those rules, and the parties received the unbiased arbitration for which they contracted.  In relevant part, the Arbitration Agreement stated that "[e]ach party shall have six hours of closing arguments . . ." and "City shall be entitled to go first and last in closing arguments." (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 2.) There is nothing to suggest that the Panel did not comply with the relevant terms in the Arbitration Agreement, as MCI itself acknowledges that during the closing presentations portion of the

11

hearing City argued first, it argued second, then City argued last.  (Pl.'s Mem. in Support of Mot. to Vacate (Doc. 498) at 5-6.)

Even assuming, arquendo, the court accepts MCI's claim that City spoke in generalities during the first portion of its closing argument such that MCI was deprived of an opportunity to meaningfully respond, that does not change the fact that MCI was given the opportunity to respond to City's closing presentation in the precise manner outlined in the Arbitration Agreement.  Arbitrators "retain[] broad discretion over procedural matters" and the Panel was under no obligation compel City to make particular arguments at the times that best suited MCI or "rewrite" the Arbitration Agreement so as to allow MCI to reply to City's final closing remarks.  See Marrowbone, 232 F.3d at 389.  MCI's arguments do not warrant vacatur under section 10(a)(3) of the FAA.

### 3. Undue Means

Section 10(a)(1) of the FAA provides that an arbitration award may be vacated "where the award was procured by corruption, fraud, or undue means."  9 U.S.C. § 10(a)(1).  "The term 'undue means' has generally been interpreted to mean something like fraud or corruption."  Three S Delaware, 492 F.3d at 529.  In the case at bar, MCI argues that City obtained the Liability Award by undue means, in that, City referred to facts during the Liability

12

Phase that were outside the record before the Panel. (Pl.'s Mem. in Support of Mot. to Vacate (Doc. 498) at 16-17.)

While MCI's factual assertion finds some support in the record (i.e., on one occasion City arguably referred to facts outside the record), MCI's section 10(a)(1) claim fails because MCI has not pointed to any evidence indicating that City's single reference to facts outside the record played a part in the Panel's liability determination.[7]  Instead of offering evidence supporting the "procurement" element of section 10(a)(1), MCI essentially ignores the element's presence in the statute.  (See Pl.'s Reply Br. in Support of Mot. to Vacate Liability Award (Doc. 531) at 5-7.)  MCI maintains that a movant under section 10(a)(1) does not need to show that the undue means in dispute obtained the arbiter's award.  (Id.)  Instead, MCI contends the movant must merely demonstrate that the undue means are "materially related to an issue in the arbitration." (Id. (citing Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378 (11th Cir. 1988); Int'l Bhd. of Teamsters, Local 519 v. United Parcel Service, Inc., 335 F.3d 497, 503 (6th Cir. 2003)) (emphasis added).)  The court rejects MCI's interpretation of section 10(a)(1) as violative of longstanding principles of statutory construction.

---

[7] Moreover, it is not clear City's conduct was fraudulent in nature.

"Under the most basic cannon of statutory construction, we begin interpreting a statute by examining the literal and plain language of the statute. The court's inquiry ends with the plain language as well, unless the language is ambiguous." Markovski v. Gonzales, 486 F.3d 108, 110 (4th Cir. 2007) (internal citations and quotation marks omitted). Here, the language of section 10(a)(1) is unambiguous. The plain meaning of "procure" is "to obtain," not "related to." See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1809 (1986) (defining "procure"). Accordingly, at a minimum, for a court to conclude that an award was procured by undue means it must find that the undue means in dispute played <u>at least some part</u> in the arbitrator's award. See Forsythe Int'l, S.A. v. Gibbs Oil Co., 915 F.2d 1017, 1022 (5th Cir. 1990) (stating that "where the panel hears the allegation of fraud and then rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur (under section 10(a)(1)) is absent").

Furthermore, "[i]n construing a statute [the court is] obliged to give effect, if possible, to every word Congress used." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (U.S. 1979). Here, adoption of a "materially-related to <u>any issue</u>" standard, at least in the form MCI contends, would read the procurement element out of section 10(a)(1). Such a standard would permit

14

vacatur even if the non-movant's use of undue means was harmless or merely related to an irrelevant issue in the arbitration.[8]

Seeing as section 10(a)(1) "does not provide for the vacatur in the event of any fraudulent conduct, but only 'where the <u>award was procured</u> by corruption, fraud, or undue means,'" Forsythe Int'l, 915 F.2d at 1022 (quoting 9 U.S.C. § 10(a)(1) (emphasis in original)), and MCI has not offered any evidence that the undue means in dispute actually factored into the Panel's liability determination, the court finds that MCI has not met its burden of proof in establishing that the Liability Award should be vacated under section 10(a)(1).

### 4. Breach of Arbitration Agreement

Finally, MCI argues that the Liability Award should be vacated because City breached its implied covenant of good faith and fair dealing under the Arbitration Agreement. (Pl.'s Mem. in Support of Mot. to Vacate (Doc. 498) at 18-19.) Specifically, MCI maintains that City breached their agreement by "seeking to

---

[8] Moreover, as stated, MCI's section 10(a)(1) complaint is directed at City's reference during argument to facts outside the evidentiary record. While an improper argument is never to be condoned, there is no basis upon which to find that the Panel's decision was based upon improper argument as opposed to the evidentiary record. "One of the principal advantages of arbitration [is the ability to select impartial] arbiters with special knowledge of particular fields" and areas of the law. See Riess v. Murchison, 384 F.2d 727, 735 (9th Cir. 1967). In view of this fact and the experience of the Panel selected by the parties, the court finds no basis upon which to find that the Panel rendered a decision based upon any facts outside the stipulated record.

15

dictate the procedures to be followed" in the arbitration proceeding and attempting to prevent MCI from presenting its case.  (Id. at 18 (emphasis added).)

Once again, the court rejects MCI's argument.  As previously noted, the Fourth Circuit has held that "[i]n order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds."  Choice Hotels, 519 F.3d at 207 (4th Cir. 2008) (citation and quotation marks omitted) (emphasis added); supra Part II.  The court finds that MCI's vacatur theory is neither supported by the FAA nor Fourth Circuit case law.[9] There are no provisions in the FAA that provide that breach of an arbitration agreement is a proper ground for vacatur.  Likewise, at common law, no court in the Fourth Circuit has recognized breach of an arbitration agreement as a ground for vacatur.

The sole authority that MCI cites in support of its claim, the Fourth Circuit's decision in Hooters of America, Inc. v. Phillips, concerned revocation of arbitration awards, not vacatur.  173 F.3d 933, 940-41 (4th Cir. 1999).  Moreover, even assuming, arguendo, that the principles espoused in Hooters apply

---

[9] The discussion in this section largely mirrors the court's analysis in its memorandum opinion filed contemporaneously herewith, where the court rejected MCI's motion to vacate the Damages Award on the same grounds.

16

to vacatur actions, vacatur is not warranted in the case at bar because the facts in this case are not analogous to the facts in Hooters.

In Hooters, the Fourth Circuit held that breach of a party's duty to perform in good faith may be a basis for revocation of an arbitration agreement. However, the Hooters court expressly limited its holding to the facts present in that case. Id. at 941. In Hooters, the Fourth Circuit emphasized that it "only reach[ed] the content of the arbitration rules because their promulgation was the duty of one party" and the case involved the unique situation where the procedural rules at issue were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding." Id. at 938, 940-41.

The facts in the present case are markedly dissimilar from the facts in Hooters. Unlike the aggrieved party in Hooters, MCI received a fundamentally fair hearing and the arbitrators applied the procedural rules governing the arbitration in an impartial manner. Supra Part III.2. Further, there is nothing to indicate that one party (i.e., City) was solely responsible for selecting the arbitral rules.[10]

---

[10] In Hooters, a contract of adhesion gave one party unfettered discretion in selecting the procedural rules that governed the arbitration. Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 936 (4th Cir. 1999). By contrast, the Arbitration Agreement in this case was drafted during the course of litigation. Considering this fact and the fact that MCI has offered no evidence to the contrary, the court finds that City

17

**IV. Conclusion**

For the reasons set forth above, it is hereby ordered that MCI's Motion to Vacate (Doc. 497) is DENIED.

This the 9th day of March 2009.

                                            /s/ William L. Osteen, Jr.
                                            United States District Judge

---

was not solely responsible for the selection of the arbitral rules. City, MCI, and National Union chose the procedural rules that governed the arbitration proceeding.